## EDWARDS, COLLECTOR, v. CHILE COPPER COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 375.  Argued March 10, 11, 1926.—Decided March 22, 1926.

1. The tax " with respect to carrying on or doing business," imposed on domestic corporations by Revenue Acts of 1916 and 1918, *held* applicable to a corporation organized for the purpose of holding the stock of a mining corporation, and of issuing and selling bonds secured by pledge of the stock and furnishing the proceeds from time to time to the other to enable it to carry on its work, other activities of the holding company consisting of maintaining an office, voting the shares, electing directors, lending the proceeds of bonds through a trust company on call loans when not needed for advances to the mining company, collecting interest, etc.  P. 455.

2. Where a single business can not be carried on without two corporations taking part in it, each, under the above acts, must pay a tax.  P. 456.

5 Fed. (2d) 1014, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals which affirmed a decree in the District Court (294 Fed.

581) for the Copper Company in an action to recover from the collector the amount of taxes alleged to have been erroneously collected.

*Assistant Attorney General Willebrandt,* with whom *Solicitor General Mitchell* and *Mr. Sewall Key* were on the brief, for the United States.

*Mr. Arthur A. Ballantine,* with whom *Messrs. Carroll A. Wilson, George E. Cleary,* and *Lowell Turrentine* were on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit to recover the amount of taxes alleged to have been erroneously collected for the years 1917 to 1920. The taxes were levied under the Acts of September 8, 1916, c. 463, § 407, 39 Stat. 756, 789, and of February 24, 1919, c. 18, § 1000, (a) (1) and (c), 40 Stat. 1057, 1126. Both statutes impose upon domestic corporations organized for profit a tax 'with respect to carrying on or doing business,' at certain rates for a fair value of the capital stock, and both exempt such corporations 'not engaged in business' during the preceding taxable year. The question is whether the plaintiff, the Chile Copper Company, brings itself within this exemption. The facts are set forth in the complaint and the case was heard upon a motion to dismiss. In the District Court judgment was given for the plaintiff, 294 Fed. Rep. 581. The judgment was affirmed on the opinion below by the Circuit Court of Appeals. 5 F. (2d) 1014. A writ of certiorari was granted by this Court. 268 U. S. 685.

The facts are somewhat peculiar. The Chile Exploration Company, a New Jersey corporation, owned mines in Chile and needed to borrow large sums of money in order to develop them. By the laws of Chile it could not mortgage its mines effectively and therefore could not

give security directly for bonds. To meet the difficulty the Chile Copper Company was organized in Delaware for the purpose of holding the capital stock of the Chile Exploration Company, issuing bonds secured by a pledge of the stock, and furnishing the proceeds from time to time to the Exploration Company to enable the latter to go on with its work. The purpose was carried out. On April 1, 1917, the plaintiff authorized the issue of collateral trust bonds for $100,000,000 to be secured by a pledge of all the above-mentioned stock. During the six months ending on June 30, 1917, it executed an agreement with underwriters and issued $35,000,000 of the bonds, received payments from subscribers, which were deposited in a special account with the Guaranty Trust Company of New York, paid the expenses of issue from the special account and made provision for the accrued interest payable upon the bonds. It also paid the interest on $15,000,000 of bonds outstanding under an earlier pledge. During the same time stockholders' and directors' meetings were held, directors and officers were chosen, corporate books and accounting records were kept, and such other acts were done and expenses paid as were necessary to keep up the corporate existence. An office was maintained for the activities described. The plaintiff owned and voted on the stock of the Exploration Company, and elected its directors, and made advances to it from the proceeds of the bonds issued in 1917, the Guaranty Trust Company being directed after payment of certain matters not to pay checks drawn upon the special account unless accompanied by a letter from the plaintiff stating that the proceeds would be used for specified purposes connected with the development of the mines. The plaintiff agreed to furnish and did furnish the Guaranty Company statements showing that the proceeds had been so applied. During the six months mentioned the sum of $1,250,000 was advanced to the Exploration Company, and

interest upon loans and a part of the bond discount paid by it to the plaintiff and payments on account of a dividend also were made.

The activities for succeeding years were similar, advances of the Exploration Company being made each year. The plaintiff had funds received from the issue of bonds in 1917, in excess of the amounts that it thought proper to advance during the given period to the Exploration Company. A part of these it invested in Liberty Bonds, but the greater part, which it had deposited with the Guaranty Trust Company and the Central Union Trust Company, it authorized those companies to lend on call in the plaintiff's name and at its risk, taking security. If the security was not satisfactory the plaintiff directed the Trust Company to call the loan. During the year ending June 30, 1920, 224 loans amounting to $37,200,000 were made and 180 loans amounting to $29,100,00 were called. In the same year the plaintiff received $332,366.90 as interest upon these loans. During the previous year it received $194,579.20 upon similar loans.

If the corporation was one that Congress had power to tax in this way, it is hard to say that it is not within the taxing acts. It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption ' when not engaged in business ' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit. In our opinion the plaintiff was liable to the tax. We do not rest our conclusion upon the issue of bonds in the first year or the call loans made in the last, and for the same reasons we cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must

be judged as a whole.   Looking at them as a whole we see that the plaintiff was a good deal more than a mere conduit for the Chile Exploration Company.   It was its brain or at least the efferent nerve without which that company could not move.   The plaintiff owned and by indirection governed it, and was its continuing support, by advances from time to time in the plaintiff's discretion. There was some suggestion that there was only one business and therefore ought to be only one tax.   But if the one business could not be carried on without two corporations taking part in it, each must pay, by the plain words of the Act.   The case is not governed by *McCoach* v. *Minehill & Schuylkill Haven R. R. Co.*, 228 U. S. 295, and *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28.   It is nearer to *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503.

*Judgment reversed.*

, MR. JUSTICE SUTHERLAND took no part in the decision of this case.