Booth, Chief Justice,
delivered the opinion of the court:
In this tax case the plaintiff, a Maryland corporation, sues to recover $59,085 assessed and paid by it upon the capital stock of the corporation for the years ending June 30, 1925, and June 30, 1926. The applicable section of the revenue act of 1924, under which the taxes were collected (43 Stat. 325), reads as follows:
“ Sec. 100. (ai) On and after July 1, 1924, in lieu of the tax imposed by section 1000 of the revenue act of 1921—
“(1) Every domestic corporation shall pay annually a special excise tax with respect to carrying on or doing business, equivalent to $1 for each $1,000 of so much of the fair average value of its capital stock for the preceding year ending June 30 as is in the excess of $5,000. In estimating the value of capital stock the surplus and undivided profits shall be included; * * *
“ (b) The taxes imposed by this section shall not apply in an}*- year to any corporation which was not engaged in business (or, in the case of a foreign corporation, not engaged in business in the United States) during the preceding year ending June 30, * *
The plaintiff’s right of recovery is predicated upon an allegation that it -was not engaged in business during the taxable years in question. The record involves two corporations, the Ward Baking Company and the Ward Baking Corporation, the latter — i. e., the plaintiff — coming into existence, as plaintiff contends, as a holding company, limiting its activities substantially to the single purpose of receiving and disbursing dividends from its stock holdings in the Ward Baking Company.
On December 6, 1923, William B. Ward transmitted to George S. Ward, president of the Ward Baking Company, a written offer to purchase not less than 51 per cent of the *465 stock of his company. The price was fixed at $100 per share for preferred and $200 per share for common stock. The usual guaranties for the performance of the contract were written into the offer and the same was to expire on December 31, 1923, with an express reservation to accept stock on the same terms subsequent to that date. Acceptance of the offer was also conditioned upon the resignation of the directors and officers of the baking company, as well as the right to verify the stated value of the stock as of November 19. 1923.
Without repetition of tedious details and figures indicating value, it is sufficient to say that Mr. Ward by the offer desired to secure a majority of the baking company’s stock in order to organize a new corporation, through which he anticipated financing the transaction, and set up a holding company. The offer was accepted and the transaction carried out as per' agreement. The plaintiff corporation was duly organized and incorporated under the laws of Maryland. It is now and has been since its organization the owner of practically all the outstanding stock of the Ward Baking Company.
The issue in this case is not a new one. Contentions identical in all respects have been many times before the courts, and we think the precedents are ample and point out with a degree of exactness the established rules for determining the fact whether the corporation claiming exemption from taxation was or was not “ engaged in business.” If the activities of the corporation were of a passive character, restricted to the management and control of its own peculiar affairs, and do not extend to the affairs of the parent corporation in such a way as to make the latter in fact more of a subsidiary and dependent organization than an independent organization, it may not .escape the classification of one engaged in business. The charter of the plaintiff corporation was comprehensive; it authorized a broad field of corporate activity, and if it so employed its corporate powers as to assume the management of, direct the policies, and actively participate in the every-day affairs of the parent company the corporation was obviously doing more than *466 collecting and disbursing dividends received upon the stock which it owned. If such be the case the holding company is, as a matter of fact, the dominant factor in the mutual interests of the two companies, and upon its activities the course pursued depends. As the Supreme Court said in the Chile Copper Company case, 270 U. S. 452, 455: “ The activities and situation must be judged as a whole. Looking at them as a whole we see that the plaintiff was a good deal more than a mere conduit for the Chile Exploration Company. It was its brain or at least the efferent nerve without which that company could not move.” In the Von BaUmbach case, 242 U. S. 503, 516, the Supreme Court said: “ The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes.” This court had a case somewhat similar in principle before it in the Chevrolet Motor Co. v. United States, 64 C. Cls. 211, wherein one corporation was active not only in its own affairs, but loaned and employed its corporate powers in promoting the affairs of another corporation, a case where mutuality of interest induced reciprocal activities, and in that case, as we believe in this, the plaintiff company was engaged in and doing business.
The record herein discloses that the plaintiff company was, as claimed, organized to acquire the stock of the Ward Baking Company. ' To accomplish the purchase thereof the plaintiff .borrowed from the Ward Baking Company and from banks large sums of money, and projected itself into the active management of its subsidiary. If real estate was acquired by the Ward Baking Company to expand its business the plaintiff company first passed upon the wisdom and necessity for so doing. Patent rights were purchased by the Ward Baking Company upon the recommendation of the plaintiff. The extent and policy of advertising cam *467 paigns were reviewed by the plaintiff, and throughout all the years involved the plaintiff continued to participate and take a lively and directing interest in practically every step taken by the baking company. These transactions, involving sometimes sums in excess of a million dollars, every one of which, from the standpoint of importance, required the exercise of business activity, the employment of much more effort than attention to its stock holdings, are convincing proof that the plaintiff not only did engage in business, but had in mind as the one purpose of its organization the direction and control of the Ward Baking Company. As a matter of fact, we think the record warrants an inference that, following the organization of the plaintiff corporation, the Ward Baking Company limited its activities to baking bread, and the plaintiff directed and controlled its fiscal and general business policies in all their aspects without interference from the company. “ The cases,” as said by the Supreme Court, “must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes.”
Plaintiff, we think, misconceives the applicability of many of the cases cited to sustain its contention — too many to justify detailed review. The mere fact that one corporation did this and another that is not alone decisive of the issue. The courts, we think, establish the principle that a corporation may not escape taxation upon this ground, when it is manifest from the record that it is actively engaged in expanding the trade, increasing the assets and dividends of the corporation whose stock is its only asset, by assuming management and control of its subsidiary. It was not alone advice given by the plaintiff that determined policies the plaintiff assumed, but it continuously busied itself with the baking company’s affairs, and took advantage of its corporate powers to maintain a corporate organization for the sole purpose of doing the identical thing it did do. It is not the volume of business done, but rather the doing of business, the act of engaging continuously in business activities which are not merely incidental but substantial and redound in increased profits by reason of their performance.
*468 It would be difficult to read the record herein and come to any other conclusion than the one which seems to establish the fact that the plaintiff herein was an active, aggressive organization, lending all its energy and business acumen to the expansion of the baking business and reaching out for increased volume of receipts in every legitimate way, for the sole purpose of augmenting by its own activities the value of the great amount of baking company stock it held.
The petition will be dismissed. It is so ordered.
Sinnott, Judge; Green, Judge; Moss, Judge; and Graham, Judge, concur.