524

**ORPHEUM CIRCUIT, Inc., v. REINECKE, Collector of Internal Revenue.**

No. 35491.

District Court, N. D. Illinois, E. D.

May 6, 1930.

George E. Holmes, of New York City, and Trude & Kahane, of Chicago, Ill., for plaintiff.

George E. Q. Johnson, U. S. Dist. Atty., and John C. Barnes, Asst. U. S. Dist. Atty., both of Chicago, Ill., for defendant.

WOODWARD, District Judge.

In this suit plaintiff seeks to recover capital stock taxes alleged to have been erroneously and illegally collected. Plaintiff paid to Mabel G. Reinecke, collector of internal revenue, the sum of $20,595 for the taxable year beginning July 1, 1923, and ending June 30, 1924, and the sum of $21,006.90 for the taxable year beginning July 1, 1924, and end-ing June 30, 1925, in all $41,601.90. The taxes were paid under protest. Claims for refund were made and denied.

The sole question presented is whether plaintiff was "carrying on or doing business" during the taxable years in question within the meaning of section 1000 of the Revenue Act of 1921 (42 Stat. 294), and section 700 of the Revenue Act of 1924 (43 Stat. 325 [26 USCA § 223 note]), all of which impose on domestic corporations annually "a special excise tax with respect to carrying on or doing business" at the rates prescribed in such sections.

Plaintiff is a domestic corporation organized under the laws of the state of Delaware. Its charter powers authorized it generally to engage in every phase of the theatrical and amusement business, including the purchase and operation of theaters and the purchase and sale of stocks of corporations so engaged.

Pursuant to its corporate purpose, plaintiff, prior to July 1, 1923, acquired all of the capital stock of 32 corporations operating theaters in various cities of the United States and other shares, less than all, in six other theatrical companies. On January 24, 1925, it further acquired 50 per cent. of the common stock of the Photo and Press Bureau and on April 29, 1925, acquired 500 shares of the Chicago Orpheum Company.

Its transactions during the periods in question may be summarized as follows:
*During the Taxable Year 1923-24:*

(1) Prior to the taxable year plaintiff had issued its gold notes, redeemable at 103, $1,800,000 of which were outstanding on July 1, 1923. During the taxable year it bought in the open market its gold notes of a par value of $100,000 at less than 103, realizing a profit of $1,862.75 on the transaction.

(2) Prior to the taxable year plaintiff had issued its preferred stock redeemable at 110. During the taxable year it purchased in the open market, at less than 110, and retired 526 shares of its preferred stock on which it realized a profit of $9,343.79. The number of shares purchased and retired was in excess of its charter requirements.

(3) It received from its subsidiaries advances on account of dividends the sum of $1,760,670.02 in the aggregate. These advances or loans were liquidated by dividends subsequently declared.

(4) On February 8, 1923, a resolution was adopted by the board of directors appointing one Vincent "General Booking Manager, under the Direction of the Executive

Committee and the Board of Directors." Prior to that date the booking had been done under the supervision of one Beck. While the duties of Vincent are not further defined by resolution, yet the evidence shows that, during the taxable year, he did the same kind of work as that performed by Beck, namely, the booking of acts and exhibitions for all subsidiaries, exhibiting companies, that was done in New York.

(5) It owned shares in the Hippodrome Amusement Company fully paid for. During the taxable year it advanced to the Hippodrome Company in the form of "assessments" the sum of $16,451.88. These advances were charged to profit and loss, and were merely payments made to meet current operating deficits of this subsidiary.

(6) It assumed the liabilities of one of its subsidiary companies to two other of its subsidiary companies.

(a) It assumed the liability of the Decatur Amusement Company (a dissolved company) to the Champaign Orpheum Company in the sum of $15,992.74.

(b) It assumed the liability of the Duluth Improvement Company (a dissolved company) to the Grand Rialto Theatre Company in the sum of $45,197.75.

(7) On July 11, 1922, it became guarantor of a lease on certain real estate in Des Moine, Iowa, made to B. B. Kahane, as lessee, of the Des Moines Orpheum Company, a subsidiary. The lease extended through and beyond both taxable years now in question. During both these taxable years plaintiff remained as guarantor on such lease.

(8) It owned shares of stock in the B. F. Keith Theatres Company. On February 8, 1923, it received a proposal from one Goodman to purchase these shares. By resolution of that date the executive committee was authorized to procure an appraisal of the Keith properties. The stock was sold to Goodman during November, 1924, at a profit of $1,-028,269. It is fair to infer that negotiations for this sale were in progress during the taxable year.

*During the Taxable Year of 1924–25:*

(1) It bought in the open market its gold notes of a par value of $257,700, at less than 103, realizing a profit of $3,352.11 on the transaction.

(2) It purchased in the open market its preferred stock, at less than 110, realizing a profit of $23,241 on these transactions.

(3) It received regular loans or advances from its subsidiaries on account of dividends aggregating hundreds of thousands of dollars. These loans or advances were liquidated by dividends subsequently declared.

(4) The general booking manager under the direction of the executive committee and the board of directors continued their activity in booking acts and exhibitions for all subsidiaries, exhibiting companies, that was done in New York.

(5) It acquired 50 per cent. of the common stock of the Photo and Press Bureau and 500 shares of stock of the Chicago Orpheum Company.

(6) It purchased five certificates of deposit aggregating $450,000.

(7) On the certificates of deposit mentioned in No. (6) it received interest of $8,-037.50.

(8) Including interest received on certificates of deposit and interest received from notes upon the sale of its stock in the B. F. Keith New York Theatres Company, it received interest in the amount of $64,000.

(9) It consummated the sale of 6,004 shares of B. F. New York Theatres Company, negotiations for which sale were opened up on February 8, 1923, paying $7,500 for appraising the Keith properties.

(10) It assumed and paid $14,588.28 of an operating deficit of the Hippodrome Amusement Company, a subsidiary corporation.

(11) Its guaranty of the Des Moines lease continued.

*Control and Management of Subsidiaries:*

One of the purposes for which plaintiff was formed was to secure control and management of its subsidiaries. To that end it acquired all of, or the controlling interest in, the capital stock of between thirty and forty corporations doing a theatrical and amusement business. The main office of plaintiff and the main office of all of the subsidiaries was in the same suite of rooms in Chicago during the two taxable years. The expenses incident to the maintenance of the head office were prorated among the various subsidiaries and paid by them. Each local theater remitted weekly to the home office the excess of its receipts over disbursements plus a working balance. Its officers acted in various capacities for the entire group of subsidiaries. One officer handled the legal, insurance, and financial matters, another had charge of the booking for the entire group, and another handled all of the publicity.

Prior and subsequent to the taxable years the evidence shows that plaintiff was engaged

526

in a course of business which was admittedly "doing business" within the meaning of the acts in question. The evidence fails to show that there was any change in policy or an abandonment of the corporate purpose prior to the taxable year. Taken in connection with the actual business transactions during the taxable years in question, it may fairly be inferred that there was no change in policy prior to or during the taxable years.

In the case of Eaton v. Phoenix Securities Co. (C. C. A.) 22 F.(2d) 497, 498, the court say:

"We do not think that anything will be gained by an extended discussion of the decisions on this tangled subject."

The court is of opinion that this case is ruled by the following cases: Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 346, 70 L. Ed. 678; Phillips v. International Salt Co., 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323 [reversing International Salt Co. v. Phillips (C. C. A.) 9 F.(2d) 389].

By a number of decisions in the Circuit Courts of Appeal, within the rule laid down in the cases cited, the plaintiff was "carrying, on or doing business" and was subject to the capital stock tax.

The Supreme Court has set up plain standards as to when a corporation is active and when it is passive. The activities engaged in by the plaintiff were not those narrow activities such as are incident to the ownership of property. Its corporate life was not dormant and passive.

It was organized to acquire and unify the management of other corporations engaged in the theatrical business. When, during the taxable years in question, it acquired the stock of a corporation, engaged in the theatrical business, it was doing the very business for which it was organized. It did not acquire such stock as an investment. It acquired such stock to procure control and to bring under its management another theatrical corporation. In Edwards v. Chile Copper Co., supra, the court say:

"It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes."

The language of the court is applicable to the case now under consideration.

The purchase of plaintiff's own gold notes and its preferred stock and the receipt of advances or loans from its subsidiaries constitute doing business. Phillips v. International Salt Co., 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323.

The payment by plaintiff of operating losses of one of its subsidiaries; the assumption by plaintiff of the liability of two subsidiaries to other subsidiary companies; the outstanding obligation of plaintiff under the Des Moines lease; the negotiations for sale of stock in the B. F. Keith New York Theatres Company and the eventual sale thereof; the receipt of interest; the appointment of executive and financial committees and the active participation by the executive committee, the board of directors, and the officers of plaintiff in the management of its affairs; the purchase of certificates of stock, all go to show that plaintiff was not a quiescent corporation, but was actively engaged in the prosecution of the business for which it was incorporated.

The court finds the issues for the defendant.