**ARGONAUT CONSOL. MIN. CO. v. ANDERSON, Collector of Internal Revenue.**

District Court, S. D. New York.

July 1, 1930.

Henry M. Hogan, of New York City (Anthony J. Russo, of New York City, of counsel), for plaintiff.

Charles H. Tuttle, of New York City (Walter H. Schulman, of New York City, of counsel), for defendant.

PATTERSON, District Judge.

These two actions, consolidated and tried together, were brought to recover capital stock taxes collected by the defendant over the five years ending June 30, 1926. Recovery is sought of the entire amounts paid, upon the ground that the plaintiff was not doing business during these years. The alternative claim is made by the plaintiff that the valuation of its assets was arbitrary and excessive. By stipulation there was a jury of one, and both parties moved for a directed verdict.

The Argonaut Consolidated Mining Company is primarily a holding company, with surplus funds derived from dividends, which have been invested and reinvested. Although organized in 1907 with the broad powers of a mining company, it has never owned any mines or engaged in mining operations. Its real career began in 1909, when it acquired, for the sum of $511,650, 51 per cent. of the stock of Argonaut Mining Company, which owns and operates a mine in California. This block of stock was for a period the only asset of the company. It is still held and is the main asset of the company. In the course of time, dividends were received from this stock and were invested by the company. By investment of these dividends, the company acquired other substantial assets, consisting in the main of securities listed on the New York Stock Exchange. Three or four other uses to which it put its funds may be mentioned. In 1917, the company purchased an interest in a small tract of Minnesota land thought to contain ore. This tract is still owned but has never been developed. In later years it put relatively small sums into notes and stocks of several obscure, and for the most part luckless, mining concerns, as speculations or as investments. For a period in 1921, it had money out on "call" on the Stock Exchange. At frequent intervals it made advances, generally of $500 each, to White Knob Copper & Development Company, Limited, which held the majority of its stock. These advances over several years totaled a considerable sum and were to enable the White Knob Company to pay taxes and eke out a bare existence. It was testified that the plaintiff regarded such advances as a good investment.

No office was maintained by the company, nor did it have any regular employees. The personnel consisted of the four usual officers (president, vice president, secretary, and treasurer), with a combined salary roll of $4,500 a year. The other overhead, expenses were postage, printing, and like items, ranging from small sums to about $1,000 a year. The company was managed by a board of directors, the board holding meetings two or three times a year. The president generally made the decisions as to the sale and purchase of securities.

It does not appear that the company took any part in managing, directing, or assisting

the Argonaut Mining Company beyond the part generally played by a majority stockholder, except for a few incidents when it temporarily advanced funds to the Argonaut Mining Company as a convenience to the latter.

The case is a close one on the facts. I incline to the opinion that the plaintiff was engaged in business during the years in question and is therefore subject to the tax.

It is settled that a mere holding company, which owns real estate or securities, collects the rents or other income, which it turns over to its own stockholders, is not doing business within the meaning of the Capital Stock Tax Law (26 USCA § 223 note). Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; McCoach v. Minehill & Schuylkill R. Co., 228 U. S. 295, 33 S. Ct. 419, 57 L. Ed. 842; United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825. Activities which are incident to such holding, collecting, and distributing, such as paying taxes, voting stock, and the like, are not sufficient to change the situation. But when a company goes beyond these bounds and engages in pursuits for further gain, it passes from the passive to the active state and becomes subject to the tax. Von Baumbach v. Sargent Land Co., 242 U. S. 503, 37 S. Ct. 201, 61 L. Ed. 460; Edwards v. Chile Copper Co., 270 U. S. 452, 46 S. Ct. 345, 70 L. Ed. 678; Phillips v. International Salt Co., 274 U. S. 718, 47 S. Ct. 589, 71 L. Ed. 1323. The quantity of such further activities is not controlling (Von Baumbach v. Sargent Land Co., supra), nor should a case be decided by consideration of the activities one by one (Edwards v. Chile Copper Co., supra). In the case last cited, Mr. Justice Holmes stated in effect that where a corporation was organized for profits and was still pursuing those ends, doing business was the rule and not doing business the exception. 270 U. S. at page 455, 46 S. Ct. 346, 70 L. Ed. 678.

Little will be gained by a review of the cases in the lower courts. It would be hard to reconcile several of them. Most of the recent cases, influenced perhaps by the general statement in the Chile Copper Case just referred to, indicate a trend toward taxability.

The present case is on the border. If the plaintiff had simply held the mining company stock, received dividends, and paid them over to its own stockholders, there would be no engaging in business and con-sequently no tax. The fact is, however, that the plaintiff did more than this. Prior to the years in question, it had built up quite a large surplus by not distributing part of the cash dividends received; and during this five-year period, it was engaged in investing and keeping invested this surplus in a profitable way. While the plaintiff was not playing the market for profits on quick turns, it does appear that watch was kept upon the stocks held and that from time to time stocks owned were sold and new stocks purchased in their place. The defendant stresses the fact that some of the securities held were nonincome-producing and must have been purchased as a speculation. This may have been the case with certain shares, such as Kennedy Mining and Milling Company and the Sinoloa Company. I cannot draw the line, however, between an investor and a speculator; I take it that the difference is frequently only a state of mind. It is fair to say, on the whole, that there was substantial activity in the investing and reinvesting of the surplus or reserve with the hope of realizing profits. Time, attention, and labor must have been devoted to the operation, for the purpose of making profits, and that is business. There was also some activity in consulting with the mining company and keeping informed as to its business. When the other matters, such as the advancing of funds to the White Knob Company, the acquisition of other mining securities, are thrown into the scales, it seems to me that the plaintiff was sufficiently engaged in business to subject itself to this tax. There may also be significance in the fact that the minutes of the meetings of the board of directors speak of their transactions as "business." This case resembles the Von Baumbach Case more than it resembles the McCoach Case. It is true that in the latter case the corporation maintained a "contingent fund," but the amount and particulars of the fund did not appear. The majority opinion made reference to this fact. 228 U. S. at page 306, 33 S. Ct. 423, 57 L. Ed. 842. Here the activities involved in the maintenance of the surplus fund do appear. Changes of the holdings were made, and surplus moneys were put into other mining ventures. In other words, there was activity in the use of the corporate surplus, a feature which was wanting in the McCoach Case.

Upon the second issue, whether the assessment was excessive, there was a dearth of proof. None of the evidence regarding the value of the Argonaut Mining Stock was sat-

222

isfactory. The burden being upon the plaintiff to establish the error of the assessment, I find a failure of proof.

I therefore direct a verdict for the defendant in both cases.