JOHN B. WILLIAMS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44582. Promulgated August 29, 1933.

*C. J. McGuire, Esq.*, for the petitioner.
*James K. Polk, Esq.*, for the respondent.

OPINION.

MARQUETTE: The respondent has determined a deficiency in income tax for the year 1926 of $13,063.98. The only error asserted is that the respondent has determined that a liquidating dividend was received by the petitioner in 1926 in payment for 1,083 shares of stock when in fact the dividend was applicable to 1,666 shares, being all the stock owned by the petitioner. The facts were stipulated. From the stipulation the following material facts appear:

The petitioner on November 13, 1925, purchased 1,666 shares of common stock of the par value of $100 per share in Smart Farm Co., a Michigan corporation, for which he paid $133,231.34. The sole business of this corporation was the selling of real estate subdivision lots on the installment plan. On December 23, 1925, the petitioner received in partial liquidation of his capital stock in Smart Farm Co. the amount of $8,838.94, which reduced the cost of his stock to $124,392.40. At a special meeting of the stockholders of Smart Farm Co., held January 2, 1926, certain resolutions were adopted, the material portions of which are as follows:

The purpose of the meeting being to consider and act upon a proposal to amend the Articles of Association of the company, to authorize this company to act as agent, to hold, collect, enforce and perform land contracts and to act as Trustee of real estate; to decrease the Capital stock of the company; and to authorize the Directors to distribute cash and assets of the company; the following resolutions were, after due consideration, made, seconded, and unanimously adopted by all the stockholders present, there being more than two thirds of the stockholders of record:

WHEREAS, it is determined to be in the best interests of the Company to partially liquidate the same and the capital stock of the Company by distributing to the stockholders of the Company pro rata according to their respective shares of such capital stock, cash and other assets of the Company which may not be required for the liquidation of corporate debts and obligations accrued and unaccrued.

AND WHEREAS it is determined that cash and assets in the amount of One Hundred Seventy-five Thousand Dollars ($175,000.00) is sufficient to pay such corporate debts and obligations accrued and unaccrued;

Now THEREFORE BE IT RESOLVED that the capital stock of the Company be decreased from Five Hundred Thousand ($500,000.00) Dollars to One Hundred Seventy-five Thousand ($175,000.00) Dollars, and that the articles of association relating to capital stock be and the same are amended so as to read as follows, viz.,

The capital stock of the corporation hereby organized is the sum of $175,000.00.

The number of shares into which the capital stock is divided is seventeen hundred fifty (1750), of the par value of One Hundred ($100.00) Dollars each.

We do further certify that the total amount of stock, after such decrease, subscribed is One Hundred Seventy-five Thousand ($175,000.00) Dollars.

The total amount of stock after such decrease actually paid in is the sum of One Hundred Seventy-five Thousand Dollars ($175,000.00).

AND BE IT FURTHER RESOLVED that Article II of the Articles of Association be amended to read as follows:

The purpose or purposes of this Corporation are as follows: Purchasing, holding and dealing in real estate, acting as agent to hold, collect, enforce and perform land contracts, and acting as trustee to hold legal title to real estate for the use and benefit of other persons.

\*       \*       \*       \*       \*       \*       \*

BE IT FURTHER RESOLVED that the directors be and they hereby are authorized to distribute cash and assets of the Company to the stockholders of the Company in proportion to their respective stockholdings therein in such amount and in such manner as they may determine and in partial liquidation of the . capital stock of the Company.

On the same date a special meeting of the board of directors was held, which adopted resolutions which, after reciting the proceedings of the stockholders' meeting, resolved, among other things, as follows:

Now THEREFORE BE IT RESOLVED that the President and Secretary be and they hereby are directed to prepare, execute and file with the proper public officials a certificate of amendment of articles of association and of decrease of capital stock in accordance with the said resolution of stockholders and

BE IT FURTHER RESOLVED that stock certificates be prepared in the same identical form as those heretofore authorized by this Board excepting only that the amount of outstanding capital stock shall be indicated thereon to be One Hundred Seventy-five Thousand Dollars, and that stock certificates in such form be and they hereby are adopted for use by this company and

BE IT FURTHER RESOLVED that stock certificates in such form as above described be prepared and issued to the stockholders of the company in proportion to their present holdings upon surrender by the stockholders of their present certificates, and that such present outstanding certificates when so surrendered shall be cancelled, and that stockholders be notified to surrender their certificates forthwith for the purpose of effecting such exchange;

That a dividend in the amount of Eighty ($80.00) Dollars per share be and the same hereby is declared in partial liquidation of the capital stock of the company payable January 2nd, 1926, to the stockholders of record that same day, payable in cash and in land contracts receivable taken at the book value thereof \*  \*  \*

\*       \*       \*       \*       \*       \*       \*

In accordance with the aforesaid resolutions, there were distributed to the petitioner on January 5, 1926, the following:

Cash _____ $346.16
Land contracts _____ 132,987.18

133,333.34

During the year 1926 the petitioner received principal payments on the land contracts, received in liquidation as recited in the foregoing paragraph, in the amount of $42,746.17. Thereafter and also during the year 1926 petitioner sold such land contracts for $90,241.01 in cash.

In accordance with the aforesaid resolutions the petitioner surrendered his certificate for 1,666 shares on February 4, 1926. On March 23, 1926, he received in return a certificate for 583 shares. The State of Michigan authorized the decrease in capital stock of Smart Farm Co. on February 8, 1926.

Authorized and outstanding capital stock of Smart Farm Co. on January 2, 1926, was 5,000 shares common, par value $100 per share, of which petitioner owned one third. After the corporate action hereinabove set forth, the outstanding capital stock was 1,750 shares common, par value $100 per share, of which petitioner owned one third. The percentage of ownership of petitioner in Smart Farm Co., therefore, was the same both before and after the reduction in capital stock.

The following is the balance sheet of Smart Farm Co. as of December 31, 1925:

ASSETS:
Cash _____ $9,357.32
Unsold lots _____ 8,277.67
Land contracts receivable _____ 575,059.98
Mortgages receivable _____ 13,329.28
Bonds _____ 9,700.00
Operating deficit _____ 301,267.44

Total _____ 916,991.69

LIABILITIES:
Mortgages payable _____ $5,595.00
Reserve for improvements _____ 31,531.41
Commissions payable _____ 43,329.90
Unrealized profits on installment sales _____ 336,535.38
Common stock _____ 500,000.00

916,991.69

The respondent computed the petitioner's gain arising from the liquidating dividend of $400,000 by attributing the total amount received by the petitioner ($133,333.34) to the 1,083 shares sur-

rendered by him and deducting from this amount the remaining cost of these shares. The petitioner contends that the amount of $400,000 should be apportioned to all the outstanding shares, 5,000, with the result that the gain on each share is less than that determined by the respondent.

Both parties agree that the distribution of $400,000 was a distribution in partial liquidation. The sole issue is whether this distribution was in complete cancellation or redemption of the 3,250 shares which were retired or was one of a series of distributions in complete cancellation or redemption of all (5,000 shares) of the stock of the Smart Farm Co. The solution of this question depends on the application of the following provisions of section 201 of the Revenue Act of 1926:

(c) Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

    *      *      *      *      *      *      *

(h) As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

The petitioner insists that by the resolutions of January 2, 1926, the stockholders accomplished two distinct and separate things: They took action for the reduction of the capital stock of the corporation, and they directed the directors to make a distribution of the assets to the stockholders of the company in proportion to their respective stockholdings. He further points out that the directors declared a dividend not on the shares to be retired, but on each of the 5,000 shares outstanding. He relies on *Remington Rand, Inc.* v. *Commissioner*, 33 Fed. (2d) 77, and other cases which hold that what was done must control rather than what might have been done. He further calls attention to that part of the resolution which states that the amount of $175,000 was sufficient to pay the corporation's debts accrued and unaccrued, thus implying that the unretired 1,750 shares of stock were practically worthless.

While we must look to things done and not to things which might have been done, we should also look to the general plan adopted by the shareholders and ascertain what was actually done in pursuance of that plan. We must not separate the fagot and break the sticks separately. *Edwards* v. *Chile Copper Co.*, 270 U.S. 452. We should not be controlled by the words of the resolutions if their real purpose and effect are otherwise apparent. *Phelps* v. *Commissioner*, 54 Fed. (2d) 289; *Gossett* v. *Commissioner*, 59 Fed. (2d) 365; 60 Fed. (2d) 484.

The stockholders had in mind three things: The amendment to the articles of incorporation (showing an intention to continue to do business); reduction of the capital stock, and the distribution of a part of the assets of the company to the shareholders. This was one plan and all of it was accomplished. Reduction of the capital stock was to be effected, and was effected, not by reducing the par value of each share, but by complete retirement and cancellation of 3,250 shares. This is what was actually done.

The fact that the reduction of capital stock could not be effected until the amended articles were secured does not militate against this view any more than if the resolutions had directly provided that the distribution was in cancellation of the 3,250 shares which were canceled. Under the resolutions each stockholder was obligated upon receipt of his part of the distribution to surrender 3,250/5,000 of his shares and the only consideration that we can perceive the shareholder received for this surrender was his part of the distribution. To call the surrender of the stock a separate, voluntary transaction is to shut one's eyes to the real obligations and the actual facts. Whatever the form, the substance was as we have stated.

Subdivision (h) recognizes two forms of partial liquidation: First, where a distribution is made in complete cancellation of a part of the stock of a corporation, and the other is one of a series of distributions in complete cancellation of all or a part of its stock. Here the series stopped with the distribution of the $400,000. The articles were amended, the business went on, and 3,250 shares of stock were retired.

We agree with the respondent that the $400,000 was distributed in complete cancellation of the stock retired. The petitioner asserts that this conclusion will result in injustice, since the $175,000 of capital stock remaining represents only that amount of assets which in turn is liable for debts of an equal amount. It offers nothing in proof of this statement except the recital in the resolutions, but the business was to go on and we cannot believe that it was to engage in business with no free assets. Besides, the balance sheet of the company as of December. 31, 1925, does not bear out the recital. It shows gross assets of $615,724.25 and liabilities, other than to stockholders, of $80,456.31, with a net worth of $535,267.94. Deducting from this the distribution of $400,000, we have left in the corporation assets of a book value of $135,267.94; or, to put it otherwise, the remaining stock, composed of 1,750 shares, had a book value of over $77 per share.

*Judgment will be entered for the respondent.*