**CODMAN et al. v. UNITED STATES.**

No. 7290.

District Court, D. Massachusetts.

Dec. 27, 1939.

Francis G. Goodale, Faneuie Adams, and Hill, Barlow, Goodale & Wiswall, all of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit for the recovery of capital stock taxes collected from the plaintiffs for the years ending June 30, 1936 and 1937. Exemption from the same is claimed on the ground that the plaintiffs were not doing business, within the meaning of the applicable statutes.

The facts are as follows:

1. The plaintiffs are trustees of the National Dock Trust, hereinafter called the "Trust", which was created by an indenture dated November 1, 1904 for the purpose of purchasing, improving, and holding real estate heretofore owned by the National Dock & Storage Warehouse Company, hereinafter called the "Warehouse Company," and also other real estate adjacent thereto in the City of Boston.

2. The trustees were authorized by the indenture to purchase this real estate, together with any existing leases thereon and the machinery and apparatus used in connection with it and to improve the same as they saw fit by the erection thereon of

suitable buildings, machinery, and apparatus.

3. The trustees were to manage the property for the best interests of the shareholders.

4. The trustees were to have sole ownership and control, and the power to sell, lease, and exclusively manage all the property held by them under the terms of the Trust.

5. They had full power to issue, for the purpose of purchasing or improving the real estate or for any other purpose of the Trust, shares at the par value of $100 to the amount of $1,000,000, and were given the power to borrow money for temporary exigencies up to $50,000 and to give their notes as trustees therefor.

6. They had full power to invest any surplus in any personal property approved by them including the right to purchase shares of the Trust.

7. They were given the power to employ agents, brokers, architects, engineers, builders, or any other person necessary to carry on the activities of the Trust and fix their compensation. Their own compensation was fixed by the terms of the instrument.

8. The shareholders were not to be personally liable and were to receive dividends from the net income of the property.

9. The Trust was to continue for twenty years after the death of certain persons named in the indenture and provision was made for trustee succession.

10. Pursuant to the terms of the trust instrument, the property of the Warehouse Company was purchased and on January 1, 1905, it was leased to the Warehouse Company for a period of thirty years at annual rentals of $52,500 to $62,500. The property consisted of a storage warehouse and wharves from which revenue was received.

11. The first years of the Trust, the plaintiffs collected the rents and paid for necessary improvements. In 1916, bonds to the amount of $600,000 were issued by the trustees to retire the original purchase price mortgage. The New England Trust Company, of Boston, was trustee for these bonds under a trust indenture dated December 1, 1910. The indenture called for payments by the trustees to a sinking fund of 1 percent of the total face value of the bonds plus a sum equal to 4½ percent of the total face value of the same. A total par value of $324,000 of these bonds had been called, in accordance with the provisions of the trust indenture above referred to, up to January 1, 1935 and a further $6,000 of the same between that period and January 1, 1938.

12. In 1912, when the Warehouse Company was in arrears for rent, the trustees took over all the capital stock of the Warehouse Company and appointed their own directors and one of the present trustees of the Trust as treasurer and the latter operated the property and turned the income over to the trustees. In 1920, the Warehouse Company made an offer, which was accepted by the plaintiffs-trustees, to turn over to the plaintiffs the net income received by it in lieu of payments called for by the lease. The lease to the Warehouse Company expired in 1934 and the trustees continue to receive the net income of the property in lieu of rents.

13. During the tax years in question, the Warehouse Company turned over to the plaintiffs almost $80,000 of net income. The comparative balance sheets from June 30, 1935 to June 30, 1936 showed that investments of the Trust increased from $1,305.48 to $1,650. The sinking fund increased during both taxable years. The disbursements for these years reflected expenditures, among other things, for an engineer's report, advice as to wool trade, legal services, major substantial repairs paid out to various persons in the 1936–1937 period of about $4,000, commissions on sugar cargoes, for experts' services in securing abatements from the City of Boston and payments on a loan made by the Warehouse Company to the Trust.

It was agreed between the parties that the Trust here involved was an "association," within the meaning of the statutes. Was it doing business within the provisions of Section 105 of the Revenue Act of 1935, 49 Stat. 1017, which, except for a change in the amount of tax in the 1936 Act (Section 401, 49 Stat. 1733), is applicable here? That section reads as follows:

"Sec. 105. Capital Stock Tax.

"(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock."

738

The law governing cases of this type is too well settled to warrant repetition. The cases will be found in American Investment Securities Company v. United States, D.C., 27 F.Supp. 494, and also in an opinion handed down by me this day in the case of Codman, Trustee v. United States, D. C., 30 F.Supp. 732.

■ Looking at this situation as a whole, the association here was organized to manage the property of the Warehouse Company for profit and was doing what it was principally organized to do in order to realize profit. Edwards v. Chile Copper Company, 270 U.S. 452, 46 S.Ct. 345, 70 L. Ed. 678. During the tax years in question, it received all the net income of the Warehouse Company, distributed none of it to its shareholders, but employed it for the purpose of carrying on its business. It owned all the capital stock of the Warehouse Company and managed its properties. Without repeating all the activities enumerated above, suffice it to say that it is my conclusion that the Trust was doing business within the meaning of the statute.

■ No comfort can be given the plaintiffs because of the fact that two separate organizations were employed in carrying on one business. They are both taxable. Edwards v. Chile Copper Company, supra.

The requests of the defendant for findings of fact and conclusions of law are all substantially granted.

Judgment for the defendant, with costs.