### BOSTON, NEW YORK & SOUTHERN S. S. CO., Inc., v. MANNING, Collector of Internal Revenue.

### No. 1671.

District Court, D. New Jersey.

Dec. 30, 1942.

Theodore Krohn, of Newark, N. J., for plaintiff.

Charles M. Phillips, U. S. Atty., of Trenton, N. J., and Paul S. McMahon, Sp. Asst. to the Atty. Gen., for defendant.

FORMAN, District Judge.

This is a suit for the recovery of $4,868.85 representing capital stock taxes and interest paid by plaintiff for the year ending June 30, 1940.

Plaintiff was incorporated under the laws of the State of Delaware in the year 1925 for the purpose of conducting a general steamship business. Its charter also granted it power to effect a wide range of other objectives.

In 1937 plaintiff was engaged in the operation of the S. S. Mandalay as a summer excursion boat. In May of 1938, shortly after it had resumed its summer excursion business, the S. S. Mandalay sank in New York harbor as a result o. a collision. In June, 1938, plaintiff recovered some $475,000 representing part of the insurance covering its loss of the vessel and the balance of its insurance claim was paid to it in 1942.

Plaintiff did not resume the operation of the excursion business but organized its wholly owned subsidiary known as Mandalay Line, Inc., which in turn purchased a vessel and engaged in such business. Plaintiff filed a corporation capital stock tax return for the taxable period ended June 30, 1940, in which the adjusted declared value of its capital stock was set forth as $4,324,458.77. It claimed an exemption from the tax on the ground that the corporation was not doing business during the taxable period involved. The exemption was rejected by the Commissioner of In-

ternal Revenue and plaintiff thereupon paid to the defendant as Collector of Internal Revenue $4,756.40 as capital stock tax and $112.45 interest, making a total of $4,868.-85, for which plaintiff claimed a refund which was likewise rejected by the Commissioner of Internal Revenue.

Thereupon, plaintiff brought this suit and upon the trial the parties agreed to practically all of the facts as set forth in a written stipulation of facts filed herein.

The authority for the tax is found in § 1200 of Chapter 6 of the Internal Revenue Code as follows: "(a) Domestic corporations. For each year ending June 30, beginning with the year ending June 30, 1939, there shall be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock." 26 U.S.C.A. Int.Rev.Code, § 1200.

This was amended by the addition of the following section of the Revenue Act of 1940: "(c) Defense tax for five years.— For the year ending June 30, 1940, and for the four succeeding years ending June 30, the rates provided in subsections (a) and (b) shall be $1.10 in lieu of $1." 26 U.S.C.A. Internal Revenue Acts, First Revenue Act of 1940, § 205.

The question to be decided is whether or not the plaintiff was "carrying on or doing business" within the meaning of the statute for the taxable period ending June 30, 1940.

It is conceded that after the sinking of the vessel "Mandalay" in 1938 the plaintiff did not engage in the excursion business. However, by specific resolution of its Board of Directors, plaintiff, on May 8, 1939, authorized its officers to "take steps to incorporate a subsidiary company under the General Corporation Act of the State of New York, to be known as Mandalay Line, Inc., with an authorized capital stock of $200,000.00, * * to subscribe and pay for 600 shares of that company when organized, of a par value of $100.00 each for the aggregate sum of $60,000.00; to vote same in favor of a plan to purchase the S. S. Bear Mountain from the U. S. Marshal for the sum of $50,000.00, payable $12,500.00 in cash and the balance on a mortgage of the new company; * * *". This direction was carried out and plaintiff furnished the down payment of $12,500 for the vessel for which it took an equivalent amount of stock. In the same month

a further advance of $12,500 was made to the subsidiary for the purpose of reconditioning the vessel and again stock was taken by the plaintiff. In June of the same year another advance of $25,000 was made for similar purposes and to acquire equipment. Later another advance of $10,000 was made so that the subsidiary could take up a mortgage note given at the time of its purchase of the vessel. In each instance stock was issued to the plaintiff to represent the amount of these advances.

From November of 1939 until June of 1941, thirteen advances were made by plaintiff to the subsidiary in sums ranging from $1,000 to $12,000, aggregating the sum of $47,000 to meet operating expenses and payment on account of the purchase price of the vessel. These were considered as loans to the subsidiary.

The identical persons who were plaintiff's officers were officers of the subsidiary and they drew substantial salaries from plaintiff for the years 1938, 1939 and 1940.

In August of 1939, plaintiff's Board of Directors authorized it to purchase a mortgage in the sum of $10,000 from its president. Other meetings of the Board were held from time to time.

It sold its furniture to its subsidiary and moved its principal office from New York to Newark, New Jersey in 1939.

Plaintiff argued it was in the process of an orderly liquidation and that the investment of funds in its wholly owned subsidiary, the Mandalay Line, Inc., and the loans and advances made to it were for the sole purpose of placing its funds in use during its period of liquidation; that the retention on salary of its officers, the investment in the mortgage and the receipt of interest and payment on account of its principal and the sale of its office furniture were all necessary normal steps or results looking toward such liquidation. It asserted that the transactions in which it engaged did not constitute "carrying on or doing business" within the meaning of the taxing act.

Plaintiff cited a number of cases in which the courts have held that under given circumstances corporations were not liable for this tax because they were not "carrying on or doing business" but were merely holding property and distributing its avails or performing only those acts necessary to a preservation of their corporate exist-

ence, &c. I cannot find those decisions applicable to the facts in the present case.

By its charter plaintiff was organized for many specific purposes among which were the objects of acquiring the stock of other corporations and to aid by loans or otherwise such corporations. In the exercise of these purposes, while it itself refrained from a continuance of its excursion business after the sinking of the S. S. Mandalay, plaintiff did set up its wholly owned subsidiary to engage in that business and supplied every dollar necessary to promote that concern. It held meetings of its board of directors, maintained its officers at approximately their usual substantial salaries, kept a large cash balance and purchased a sizeable security as an investment.

█ It is realized that the crucial words "carrying on or doing business" are not susceptible of abstract or general interpretation and the application of the tax must depend on the facts of each particular case.

█ I am satisfied that although the plaintiff had ceased to carry on within its own framework the kind of excursion business it had formerly conducted, nevertheless it still engaged in business so as to make the tax applicable to it. During the course of the argument plaintiff's counsel pressed with tenacity the theory to the effect that plaintiff was in a state of suspended animation pending liquidation but little evidence bears out this theory. It is true that the direct activity of the excursion business no longer concerned the plaintiff, but the other activities referred to herein constituted a course and conduct of business within the meaning of the law and no particular amount or volume of business is necessary to subject a corporation to the tax. I gathered the suggestion during the argument that because plaintiff was possessed of considerable assets it was considered wise to organize a new corporation to carry on its former business of purveying to the excursion trade rather than to resume such a business itself so that in the event the excursion vessel should come to grief plaintiff's assets would not be exposed to liability. It seems that in organizing and conducting its subsidiary's operations plaintiff was acting entirely within the scope of its orginal purposes as set forth in its charter and that it found it expedient to utilize two corporations to effect its objectives. In this respect it seems to come clearly within the view of the case of Edwards v. Chile Copper Co., 270 U.S. 452, at page 456, 46 S.Ct. 345, at page 346, 70 L.Ed. 678, wherein the court said:

"There was some suggestion that there was only one business and therefore ought to be only one tax. But if the one business could not be carried on without two corporations taking part in it, each must pay, by the plain words of the Act."

In the interpretive light of Articles 42 and 43 of Treasury Regulation 64 (1938 ed.) I am constrained to the opinion that plaintiff comes well within the scope of the statute and is liable to the tax. Recent approval of this regulation as an appropriate aid to resolve uncertainty was given in the case of Magruder v. Realty Corp., 316 U.S. 69, 62 S.Ct. 922, 924, 86 L.Ed. 1278. Since plaintiff claims exemption from the statute on the plea that its acts were only consistent with an orderly liquidation of its assets it is interesting to note that in the latter case although the corporation involved was formed for the specific purpose of liquidating certain properties it still was held liable for the tax since it was "actively engaged in fulfilling the purpose of its creation, the liquidation of its holdings for the best obtainable price." Magruder v. Realty Corp., supra. Similarly this plaintiff cannot "fall into that state of quietude, covered by the specific language of Article 43(b) (2), in which it was merely owning and holding specific property and distributing the resulting proceeds". Magruder v. Realty Corp., supra. Hence this suit for the recovery of the tax paid together with interest must be dismissed with costs to the defendant.