HELVERING, Com'r of Internal Revenue, v. SCOTTISH AMERICAN INV. CO., Limited.

SAME v. SECOND BRITISH ASSETS TRUST, Limited.

SAME v. BRITISH ASSETS TRUST, Limited.

Nos. 5122–5124.

Circuit Court of Appeals, Fourth Circuit.

Nov. 8, 1943.

Warren F. Wattles, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Samuel H. Levy, and Helen Goodner, Sp. Assts. to Atty. Gen., on the brief), for petitioner.

Marion N. Fisher, of New York City (William H. Harrar, of New York City, on the brief), for respondents.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Scottish American Investment Company, Limited, British Assets Trust, Limited, and Second British Assets Trust, Limited, are all corporations organized under the laws of Great Britain. Each has its principal office in Edinburgh, Scotland. For convenience, the three corporations are hereinafter called the Trusts. The Trusts were engaged in the business of investing the funds of their security-holders. These investments were made primarily for the purposes of security of principal and adequacy of income.

On December 2, 1936, the Trusts had over $40,000,000 invested in securities in the United States. Walter A. Cooper, C.P.A. (hereinafter called Cooper), had been engaged by Scottish American Investment Company, Limited, for the purpose of making an audit of this Company's sales of securities and profits for a period of years prior to 1936. Cooper was a partner in the accounting firm of Barrow, Wade, Guthrie & Co., of New York City.

In September and October, 1936, Cooper and Breeding (an employee of the Barrow-Wade firm) discussed in Scotland with officers of the Trusts the problem of opening an office for the Trusts in the United States. In that connection, the possible advantages of such an office as to taxes in the United States were considered. Cooper and Breeding, however, returned to the United States without any agreement having been reached as to the opening of an office for the Trusts in the United States.

Each of the Trusts, by cable on December 2, 1936, appointed Cooper its assistant secretary and authorized him to open offices for the Trusts in the United States. Letters to Cooper, of even date, confirmed the cable and contained further instructions. Cooper, immediately upon receipt of the cable, rented office space of two rooms in the Equitable Building in New York, on the floor just below the offices of the Wade-Barrow firm. A lease of one year was executed, with a designated portion of the offices assigned to each of the Trusts. Cooper seemed to act with unusual speed to set in motion the activities of the offices of the Trusts. The New York banking firms having custody of the securities of the Trusts were furnished with the names of new nominees for these securities. The American corporations, whose securities were owned by the Trusts, were notified to send reports, statements and notices, and to pay dividends, to the New York offices of the Trusts. Employees were engaged, a telephone (connected through the switchboard of the Wade-Barrow firm) was installed, and a system of book-keeping and accounts was set up.

As assistant secretary, Cooper had the same measure of authority as any officer or director of the Trusts at the home office

in Scotland. Definite authority was given to Cooper: (1) To collect and deposit in the bank accounts of the Trusts dividends on the American securities; (2) to draw on these accounts up to $5,000 a month and to pay local expenses of the New York office; (3) to keep complete records of the American securities; (4) to make periodic reports (usually once a week) by cable and/or letter concerning economic and political developments in the United States; (5) to complete and file federal income-tax and capital-stock-tax returns; (6) to forward plans of corporate reorganizations and to make definite recommendations to the Trusts concerning the action to be taken by the Trusts in connection with such reorganizations; (7) to dispose of stock rights and scrip; (8) to act, under certain circumstances, on proxies; (9) to designate the specific stock certificates to be transferred upon a sale by the Trusts of less than all of their holdings in a particular corporation.

We are here concerned with income taxes of the United States on the Trusts for the calendar years of 1936 and 1937. The three cases were argued together and may be disposed of in a single opinion. The Board of Tax Appeals (hereinafter called the Board, and now the Tax Court of the United States) decided that the Trusts were resident foreign corporations and taxable accordingly.

Whether or not the Trusts are taxable as resident foreign corporations depends on whether or not the Trusts had "an office or place of business" within the United States under section 231(b) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int. Rev.Acts, pages, 907, 1097, which reads:

"§ 231. Tax on Foreign Corporations
\* \* \* \* \*
"(b) Resident corporations. A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a), but the normal tax imposed by section 13 shall be at the rate of 22 per centum instead of at the rates provided in such section."

"(b) Resident corporations—A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable as provided in section 14(e) (1)."

Regulations of the Commissioner of Internal Revenue, 101 (art. 231–1 (b) ) under the Revenue Act of 1938, provides: "Whether a foreign corporation has an 'office or place of business' within the United States depends upon the facts in a particular case. The term 'office or place of business,' however, implies a place for the regular transaction of business and does not include a place where casual or incidental transactions might be, or are, effected."

We agree with the Board that the Trusts, under the Statute and Regulations, had "an office or place of business" within the United States and that they were thus properly taxed for the years in question as resident foreign corporations.

Reduced to its simplest terms, the contention of the Commissioner seems to be that the business of the Trusts was primarily the purchase and sale of securities, that all decisions as to such purchases and sales were made in Edinburgh and orders therefor were given directly from Edinburgh to brokers in the United States, that, accordingly, the many and varied activities of the New York office of the Trusts were merely "casual or incidental." Hence, the Commissioner asserts, the Trusts, within the meaning of the Revenue Acts and the Regulations, had no "office or place of business" within the United States and, therefore they were not resident foreign corporations and not taxable as such. We cannot concur in so broad a contention.

The cases cited in the brief of the Commissioner are not opposed to the decision reached by the Board in the instant case. See Linen Thread Co. v. Commissioner, 2 Cir., 128 F.2d 166, certiorari denied Linen Thread Co. v. Helvering, 317 U.S. 673, 63 S.Ct. 79, 87 L.Ed. 541, Aktiebolaget Separator v. Commissioner, 45 B. T. A. 243, affirmed per curiam, 2 Cir., 128 F.2d 739; B. W. Jones Trust v. Commissioner, 4 Cir., 132 F.2d 914. In the Linen Thread case and the Aktiebolaget case, the activities and responsibilities of the office in the United States were neither so important nor so extensive as were those of Cooper here. In the Linen Thread case, too, the foreign corporation was a manufacturer and the investments were in the nature of a side-issue, while investing was the sole business of the Trusts before us. In the B. W. Jones Trust case (decided by this Court) the resident trustee had more responsible and more important duties than Cooper had, for that trustee had actual custody of the securities and he had the power to

make sales and purchases. Yet this case does not hold that such power on the part of the resident trustee, agent, or officer is essential in order that the foreign corporation may have an "office or place of business" within the United States under our tax statutes.

We think there is more than ample support in the record for the finding by the Board that the Trusts here had an "office or place of business" within the United States. The duties, powers and responsibilities of Cooper were far from being purely ministerial, casual or incidental. He was vested with real discretion, his duties were varied and important, the transactions passing through his office in connection with the American investments of the Trusts were many in number and involved large sums of money. And this is nonetheless true, even though he had no power to make final decisions as to what securities were to be bought or sold. There was nothing artificial or sham about this office. We agree, too, with the Board that the proper approach to this problem is not to consider each activity and power separately and to analyze it apart so as to determine whether that one activity or power, considered alone, can be construed as casual or incidental. But the composite picture of these activities and powers must be viewed as an integrated whole and a solution must be sought accordingly. The strength of a rope is not that of a single strand, or as Mr. Justice Holmes aptly said in Edwards v. Chile Copper Co., 270 U.S. 452, 455, 46 S.Ct. 345, 346, 70 L.Ed. 678: "We cannot let the fagot be destroyed by taking up each item of conduct separately and breaking the stick. The activities and situation must be judged as a whole."

Perhaps more favorable treatment under our tax laws may have been a prime determinant in inducing the Trusts to open and operate this New York office under Cooper's charge and direction. But this does not prevent this office, if in reality that is just what it was, from being an "office or place of business", with the rights, privileges and advantages thereunto appertaining under our tax laws.

Finally, the Commissioner contends that there was certainly no "office or place of business" here for the year 1936. The foreign corporation is classified and taxed as a resident foreign corporation, if the corporation has an office or place of business within the United States "at any time

within the taxable year". Regulations 94, Art. 231-1. We think that what has been said about the activities and operations of Cooper during the month of December, 1936, affords ample support for the Board's finding that the Trusts had an "office or place of business" within the United States at some "time within the taxable year" of 1936.

The decision of the Board of Tax Appeals is affirmed.

Affirmed.