**BLAIR, Commissioner of Internal Revenue, v. WILSON SYNDICATE TRUST.**

**No. 5641.**

Circuit Court of Appeals, Fifth Circuit.
March 26, 1930.

Sewall Key and Harvey R. Gamble, Sp. Assts. to Atty. Gen., C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and P. S. Crewe, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

44

Alex F. Weisberg, of Dallas, Tex. (Thompson, Knight, Baker & Harris, of Dallas, Tex., on the brief), for respondent.

Before BRYAN and FOSTER, Circuit Judges, and DAWKINS, District Judge.

FOSTER, Circuit Judge.

Respondent, through the trustee, filed fiduciary return for the years 1921, 1922, and 1923, showing no income taxes due. The Commissioner of Internal Revenue, on the theory that respondent was not an ordinary trust but should be classed as an association, taxable in the same manner as a corporation, determined deficiencies for the respective years of $9,359.44, $20,563.97 and $15,554.-70, and in addition imposed a penalty of $2,-339.88 for the first year. On appeal, the Board of Tax Appeals reversed the Commissioner. 14 B. T. A. 508.

Stated as briefly as possible, the material facts as found by the Board, which are not in dispute, are these:

J. B. Wilson, a resident of Dallas, Tex., died testate on January 27, 1920, leaving a large estate composed entirely of community property. He was survived by his widow, Laura D. Wilson, and by his five married daughters. His widow declined to take under the will, the estate was partitioned, and she received one-half of the community property of the approximate value of $1,000,000. After receiving her share of the community property, Mrs. Wilson divided her personal property in kind among her daughters. She was advised and believed that her real estate could neither be equitably divided nor sold to advantage. Desiring to make further provision for her daughters, on May 21, 1920, she executed a deed naming two of her sons-in-law as trustees and conveying to them all her real estate for the benefit of herself, in the proportion of two-sevenths, and her five daughters, in the proportion of one-seventh each.

The trust deed gave the trustees full power in the administration and disposal of the property, and directed them to sell or otherwise dispose of it as rapidly as could be done to advantage and to distribute the proceeds to the beneficiaries, the trust to continue until all the property was disposed of, but not exceeding fifteen years, at the end of which period any property remaining was to be partitioned.

If necessary to advantageously dispose of the property or to protect it, the trustees were empowered to purchase controlling or adjacent property and to erect buildings, the new property to become part of the trust estate. They were also authorized to continue existing agreements as to the property.

The trust deed provided that the trustees might resign at any time or be removed by a majority of the beneficiaries with or without cause. A majority of the beneficiaries might also fill vacancies in the office of the trustee.

The trust deed further provided that at any time all the beneficiaries might request the trustees to terminate and close the trust, upon which request the trustees were required to settle their accounts and convey to the beneficiaries their undivided interests in the trust property.

The first trustees resigned on October 31, 1921, and the City National Bank of Dallas, Tex., was appointed sole trustee by all the beneficiaries. At the same time, by an agreement, to which the bank was a party, the provisions of the trust deed were modified to restrict the power of the trustees, in that certain working agreements with joint owners of some of the items of real estate should not be disturbed; that the trustee should not sell any property nor reduce the rentals or leases in a building known as the Wilson building without the approval of a majority of the beneficiaries; that the trustee should not purchase property or make improvements, other than necessary repairs, except on the approval of five-sevenths of the beneficiaries; that the trustee might be removed and vacancies filled by five-sevenths of the beneficiaries instead of a majority. A schedule of fees to be paid the trustee on sales made, in addition to an annual compensation of $5,000, was fixed. The trustee agreed to make advances, consistent with its banking powers, at not exceeding 7 per cent. interest.

The trust deed covered an eight-story building known as the Wilson building and a twelve-story building known as the Annex. The first two stories of the Wilson building and the entire Annex were rented to a tenant by a lease having twelve years to run. The other stories of the Wilson building were rented as offices to various tenants. The trustee executed a lease for 25 years on said two stories of the Wilson building and all of the Annex to begin at the expiration of the existing lease.

The trust deed also covered undivided interests in two properties, one known as the Washington Theatre, and the other being property on the corner of Maine and Murphy streets in Dallas. Fred P. Wilson owned a one-half undivided interest in the first-named property and an undivided one-fourth inter-

est in the second. He managed the properties and collected the rents, accounting to the trustee. Another item covered by the trust deed was an undivided interest in a building known as the Elks building. G. H. Schoellkopf owned an undivided one-half interest in this building and managed it, accounting to the trustee. The interest of the trust estate in the Elks building was sold by the trustee in 1922, and the interest of the trust estate in the Washington Theatre building was sold in 1927, and the profits of both sales were distributed in accordance with the terms of the trust.

The trust deed covered a one-third undivided interest in a ranch in Parker county, Tex., known as the Eddleman ranch, consisting of 3,262.3 acres, which belonged to a partnership, composed at the time of his death of J. B. Wilson, W. H. Eddleman, and James H. Furneaux, each in the proportion of one-third. There was owing to Mrs. Wilson by each of the other partners of her husband the sum of $29,567.91, for their respective one-third interests. The trust deed also covered an undivided two-thirds interest in a ranch in New Mexico, consisting of 85,603.72 acres, which belonged to a partnership composed of J. B. Wilson at the time of his death and J. H. Furneaux. Furneaux's interest was one-third, but he had not paid for it. At the time of the death of J. B. Wilson, there was in effect an agreement by which James H. Furneaux was to manage and operate both ranches, Wilson to advance such money as might be needed for the conduct and operation of them and Furneaux to turn over to Wilson such share of the net proceeds as he was entitled to. This contract had about three years to run, and was continued by the trustee until its expiration in May, 1923, at which time it was renewed by the trustee for five years. It was found that the breeding and raising of cattle on these ranches was not profitable, and they were changed to sheep ranches. A dam was built on the New Mexico ranch, at an expense of $50,000, which turned out to be a failure. The trustee advanced the necessary funds for the changing of the ranches from cattle to sheep, for building the dam, and for other expenses incident to their operation.

The trustee from time to time made efforts to find purchasers of the trust properties on advantageous terms, but, except as to the sale of the interest in the Elks building and Washington Theatre building they were unable to do so. However, they traded property known as the North Texas building, a six-story building in Dallas, for 20,000 acres of ranch land in Randall and Deaf Smith counties, Tex. An arrangement was made with J. H. Furneaux for the operation of this ranch in connection with the ranches in which he was interested.

The petitioner insists that on the above-stated facts the respondent is not truly a trust, but is an association, and therefore taxable as a corporation under the provisions of sections 2 and 230 of the Revenue Act of 1921 (42 Stat. 227, 252), under which this case arose.

It is contended that the test is whether the respondent was conducting a business and the beneficiaries had control of the trustees. To sustain this, a number of cases dealing with the doing of business are cited. They need not be reviewed as it may be considered settled, within the meaning of the taxing laws, that, if a corporation is doing that for which it was organized, for the purpose of earning profit, very slight activity is sufficient to constitute the doing of business. Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. On the other hand, if a corporation is not organized for profit, but merely to hold real estate for ultimate disposal and liquidation, it is not doing business, although it incidentally collects the rents and distributes them. Zonne v. Minneapolis Syndicate, 220 U. S. 187, 31 S. Ct. 361, 55 L. Ed. 428; United States v. Emery, etc., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825.

Reliance is also had on the case of Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 467, 68 L. Ed. 949. In that case the Supreme Court had occasion to consider the application of the corporation tax imposed by the Revenue Act of 1918 to three so-called Massachusetts trusts. The Revenue Act of 1918 contained a provision similar to the 1921 act classing "associations" as corporations. The Massachusetts trusts under consideration had many characteristics common to corporations. They were organized to do business for profit by agreement between the owners of certain designated property who became the beneficiaries. Transferable shares were issued. The shareholders, not necessarily the original cestuis que trust, could increase the number of trustees, change them at will, or by annual election, modify the declaration of trust, and terminate the trust. The Supreme Court held them to be associations, approving the following definition of the word "association." The court said: "The word 'association' ap-

pears to be used in the Act in its ordinary meaning. It has been defined as a term 'used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.' "

The difference between the respondent and the Massachusetts trusts considered in Hecht v. Malley, supra, is very marked. The respondent was not organized for the purpose of doing business for profit, nor for doing business at all. Its purpose was to liquidate and distribute an estate. The beneficiaries, other than its creator, had no vested interest in the property and no voice in instituting the trust. They received their distributive portions purely as donations from their mother, and could not dispose of their interests, except by an equitable assignment of their rights, subject to the orderly administration of the trust. Such slight business activities as the trustee conducted were in furtherance of the ultimate purpose of liquidation and distribution. The similarity as to the provisions for terminating the trust, amending the deed, and removing and electing trustees are hardly material, as they are not unusual in express trusts.

The test urged by the petitioner has no application to the facts in this case. A distinction is to be made between an agreement between individuals in the form of a trust and an express trust created by an ancestor, although they may have some features in common. The controlling distinction is that one is a voluntary association of individuals for convenience and profit, the other a method of equitably distributing a legacy or donation. Congress has recognized this distinction, classing the former as associations, to be taxed as corporations, and at the same time providing for a separate and distinct method of taxing the income of estates and trusts created by will or deed, classing them together for that purpose. Section 219, Revenue Act of 1921 (42 Stat. 246).

It is not disputed that the respondent is a valid express trust under the laws of Texas, and it is not suggested that any provision of the deed is inconsistent with the general rules governing the creation of such trusts. The respondent does not come within the definition of "association" applied in Hecht v. Malley, supra. It is plain that it is truly a trust, and is to be so classed, and not as an association or corporation.

Affirmed.