## PAGE et al. v. M. RICH & BROS. CO.*
### No. 8842.

Circuit Court of Appeals, Fifth Circuit.
Nov. 8, 1938.

*Rehearing denied Jan. 16, 1939.

608

T. Hoyt Davis, U. S. Atty., of Macon, Ga., J. Leonard Lyons and Sewall Key, Sp. Assts. to Atty. Gen., and Jas. W. Morris, Asst. Atty. Gen., for appellants.

M. E. Kilpatrick, of Atlanta, Ga., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was to recover back capital stock taxes paid for the years 1933 and 1934. The claim generally was that in those years the taxpayer was not carrying on or doing business as a corporation, within the meaning of the capital stock provisions of Sec. 215 of the National Industrial Recovery Act, 48 Stat. 206, and Sec. 701 of the Revenue Act of 1934, 26 U.S.C.A. § 1358.

Specifically, it was claimed that, incorporated in 1901 for the purpose of doing a department store business, the taxpayer continued in that business only until April 3, 1929; that on that date it transferred its entire department store business, including goodwill, to another corporation, Rich's Incorporated, agreeing that it would not engage in any similar business, and that it has faithfully kept that agreement.

The defense was that though the taxpayer did sell its merchandizing business, and did cease the exercise of its charter power to conduct such a business, it did not cease to do business as a corporation. But on the contrary, under the agreement it made with the purchaser of its mercantile business that it would not use the name "Rich" except in connection with the managing, holding, selling, buying and trading in real estate, stocks, bonds, or other kinds of securities, it continued to do business as a corporation under Sub.(B) of its charter, which authorized it "to buy, and sell real and personal property," and it was actually engaged in doing such business as a corporation in the years in question.

Filed in the Columbus Division, the case was by mutual consent of the parties, tried in the Macon Division. There, after a full trial on the merits, and upon evidence presenting no serious conflict, the District Judge decided with and gave judgment for plaintiff. Appellants are here insisting that a judgment was demanded for them.

Here appellee moves for a dismissal of the bill of exceptions, because the case, though tried at Macon, was filed and was pending in the Columbus Division, and considered as a Columbus Division case, the bill of exceptions was not timely filed.

On the merits, it insists that the evidence shows that the taxpayer was not doing business as a corporation in the years in question, but was completely inactive, merely holding in its name and for its stockholders certain real properties which they owned.

We agree with appellants that the trial of the case in the Macon Division and the entry of judgment there makes it, for all purposes, including the appeal, a Macon Division case, and that as such the appeal was timely brought.

We agree with appellants too that the evidence demanded; a finding, that in the years in question the taxpayer was, within the meaning of the taxing acts, doing business as a corporation; and a judgment in their favor.

Upon the motion to dismiss appellee vigorously argues that failure to comply with the formal requirements for transfer prescribed by Sec. 58 of the Judicial Code, 28 U.S.C.A. § 119, kept the case, for purposes of appeal, a Columbus Division case, prevents it being considered here as one appealed from the Macon Division.

We do not think so. The entire record of the proceedings, all the acts and conduct of the parties, speak with one voice that the case was considered, tried, and adjudg-

ed at the Macon Division, and was appealed as a Macon Division case.

Appellee concedes it was properly tried in the Macon Division. It makes and made no objection to its being tried there. Appellants considered it as such a case, and proceeded accordingly. The District Judge so considered it. In his order of May 27, 1938 he declared that the case had been set for trial at the November term of the Macon Division by agreement of the parties; that the November term of the Macon Division terminated on the first Monday in May; and that on April 30, 1938, he entered an order extending that term for the purpose of enabling the parties to perfect an appeal. No order extending the term of the Columbus Division was applied for or entered. At no time in the lower court was any objection made to the procedure followed. The first objections lodged against it were those made in appellee's motion to dismiss, filed in this court. The appeal was timely prosecuted; the motion to dismiss is denied.

On the merits, we think the District Judge failed to note and give effect to the greatly significant fact that, though appellee did cease its corporate activities as a merchandizer, coinincident with the ceasing of those activities it deliberately entered upon the business of a real estate corporation, under the second of the powers conferred in its charter; and that ever since not in liquidation, but as an active and going concern, it has been engaged in business as such corporation.

In the agreement it made with Rich's Inc., its merchandizing successor, it was provided that appellee should retain the right to use the name "Rich" as a part of its corporate name; but that such use should not be in connection with the operation of any business connected with the merchandizing business in the United States, except Nevada, and "is to be confined strictly to managing, holding, selling, buying and trading in real estate, stocks, bonds and other securities." From the minutes of the annual stockholders meeting on January 18, 1930, it appears that "The President addressed the meeting briefly, outlining the change in the organization from an operating department store to a real estate company, and of the sale to Rich Inc. of the operating company."

As such company plaintiff from time to time entered into written leases of the properties it held, consisting in the beginning of three pieces of rental property of the value of more than $400,000, collected its rents, repaired and managed its properties, and generally conducted itself as the real estate corporation it had converted itself into. During 1935 and 1936 appellee made repairs costing $248,568 on the department store property which Rich Inc. had taken over under an agreement to make all repairs. In addition to these activities, the company at various times set on foot unsuccessful negotiations for the purchase of properties of large value, with authorization to the officers of appellee to execute all papers necessary to consummate the purchases. In 1933 appellee had $1,500,000 in stock outstanding, and it distributed dividends from earnings of $60,000 or 4%. In 1934 it distributed dividends of $75,000 or 5%.

Because the company distributed its entire net income to its stockholders, and because though the company was offering to purchase and acquire property, it did not buy any during the taxable years in question, the District Judge, notwithstanding these facts above set out, was of the opinion that its activities were those of a standby nature, in short, merely those of a holding company, and that under the statute and the Regulations, it was not subject to a tax.

In support of the District Judge's view appellee relies on Regulation 64, Article 88, providing that—

"A holding company is one whose corporate powers are limited to the mere owning and holding of property and distribution of its avails, or one which, although incorporated for the purpose of doing business, has retired from the business for which it was organized, and has reduced its activities to the mere ownership and holding of property, distributing its avails and doing only such acts as are necessary to the maintenance of its corporate existence and the private management of its purely internal affairs," and on Article 85—"A corporation, the activities of which are confined to holding property, receiving income therefrom, and distributing such income, does not incur capital stock liability."

It relies too, on United States v. Emery, Bird, Thayer Realty Co., 238 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; McCoach v. Minehill & S. H. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842; Jasper & Eastern Ry. Co. v. Walker, 5 Cir., 238 F. 533; Rose v.

**610**

Nunnally Inv. Co., 5 Cir., 22 F.2d 102, and certain District Court cases.

Appellants, conceding the validity of the Regulations and that if appellee was a mere holding company, as described in them, it would not be liable for the tax, insist that to find that it was, is to entirely misapprehend the evidence.

As to the authorities appellee relies on, appellants insist that they are all fact cases. None of them had to do with facts like those here. They cite in support of their view that the appellee was doing business, Blair v. Wilson Syndicate Trust, Cir., 39 F. 2d 43; Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678; Phillips v. International Salt Co., 274 U.S. 718, 47 S.Ct. 589, 71 L.Ed. 1323; Harmar Coal Co. v. Heiner, 3 Cir., 34 F.2d 725; New Haven Securities Co. v. Bitgood, 2 Cir., 87 F.2d 759; Chevrolet Motor Co. v. United States, 64 Ct.Cl. 211.

■ Finally, they insist that though each case must at last of course turn upon its own facts, the rule is well established that it is not necessary, in order to be subject to a tax, that the corporation do any great amount of business. The rule is that "if a corporation is doing that for which it was organized, for the purpose of earning profit, very slight activity is sufficient to constitute the doing of business." Blair v. Wilson Syndicate Trust, Cir., 39 F.2d 43, 45; Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312.

Tested by that rule, we think it plain that appellee was doing business. While it is true that during the taxable years in question appellee did not actually buy any property, or do more than collect the rents on and keep up the property it had, it endeavored to make purchases, and within a few months of the ending of the fiscal year in question it made a purchase. In addition, though not in the years in question, but as part of a continued course of business, and therefore throwing light upon its status in the taxable years, it expended large sums of money on repairs, made at least one purchase, and from time to time was negotiating on, and endeavoring to make, other purchases.

These activities standing alone, we think carry a plain and unequivocal meaning. But if it could be considered that standing alone, they speak equivocally as to whether the company was doing a real es-

tate business, or merely a holding company, the terms of the agreement under which the sale of its merchandizing business was made, and the statement of its President in 1930 to its stockholders, that it was now in the real estate business, make unequivocal what might otherwise be equivocal, give plain and unmistakable meaning to all that was done. For nearly ten years this company has continued in existence, maintaining itself as a going corporation, undertaking no liquidation, undergoing none. During all this time it has been, as its President said it was, in the real estate business. As a corporation, doing a real estate business, it was subject to the tax.

The judgment is reversed, and the cause is remanded, with directions to enter judgment for appellants.