## KETTLEMAN HILLS ROYALTY SYNDICATE NO. I v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9539.

Circuit Court of Appeals, Ninth Circuit.
Dec. 19, 1940.

Rehearing Denied Jan. 21, 1941.

Maurice E. Gibson, of San Francisco, Cal., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, S. Dee Hanson, and Carleton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Kettleman Hills Royalty Syndicate No. 1, a trust, hereafter called taxpayer, petitions for a review of a decision of the Board of Tax Appeals holding it a business trust, an association corporate in character, and its income for the tax years 1934, 1935, and 1936 taxable under the provisions of Section 801(a)(2) of the Revenue Act of 1934 and Section 1001(a)(2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, §. 3797(a)(3).

. Taxpayer is a trust, admittedly in the corporate form.* Its enterprise is the ad-

---

* Its Agreement and Declaration of Trust provided inter alia as follows: That the trustees agree to hold in trust the property delivered to them, as well as all other property which they may acquire as such trustees and all moneys, properties and securities accruing therefrom that may be received by them, to handle, improve, manage and dispose of the same and to collect, receive and distribute the income and profits therefrom to the holders of certificates; that legal title, ownership and control of the estate is vested in the trustees; that the trustees shall conduct all business and execute all instruments under the name of Kettleman Hills Royalty Syndicate or other name to be selected; that the trustees acknowledge receipt of the property which; with any other property which may be acquired by them for the purposes provided by the agreement, shall be received, held, owned, controlled, managed and applied to the uses mentioned in the instrument; that the trustees will carry out the obligations of one Jacoby with the Associated Oil Company, which obligations are assigned to the trustees, including payment of taxes, execution of leases, drilling of any and all oil wells required or permitted, receiving, storing and selling oil, gas and gasoline, and will protect the interests under the agreement in any manner they may deem proper; that the trustees shall collect and receive the royalties and distribute the net income and profit therefrom to the holders of certificates; that they are authorized, in furtherance of the interests of the "trust estate," to develop and drill for oil and gas, to buy and sell oil, gas, gasoline or hydrocarbon substances, to enter into or acquire franchises, contracts or concessions in relation to the operation of the estate and to

ministration of royalty rights contracts with the Associated Oil Company covering lands in what are known as the North Dome Area and the Middle Dome Area of Kettleman Hills in Kings County, California.

Taxpayer claims that in exercising its rights and performing its obligations under these contracts it is not conducting a business for profit of the character of the business enterprises in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Coleman-Gilbert Associates, 296 U.S. 396; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275.

It is stipulated concerning all the royalties received by the taxpayer in the tax year in question and in prior years that they were received from the North Dome lands under an agreement of May 5, 1928, providing that "Second party [Associated] agrees to pay to first party [taxpayer] a royalty of 7½% of the value at the well of all oil and/or gas produced and sold by second party (except oil or gas used for production purposes or unavoidably lost) * * *, or at first party's [taxpayer's] option, exercised not oftener than once in any one calendar year, upon sixty days' previous written notice, second party will deliver into first party's tanks on the said premises, or at the mouth of well to pipe line designated by first party, first party's 7½% of said oil," and later modifying agreements, hereafter discussed, retaining this option provision. The royalty interest in the continuing production thus create for the taxpayer the right to receive such oil and gas or their money equivalent.

■ Under the original contracts covering the Middle Dome lands, it was provided that taxpayer's royalty interest should be delivered in "money or in kind and in the same manner as delivery is made to the Government." Whether the option to have

delivery in money or in kind under this provision rests in taxpayer, Associated or the Government, delivery in kind necessarily is contemplated as a likely business function by the taxpayer trust holding the royalty contract.

The acquisition and distribution of such oil and gas necessarily involve the business of selling the successive deliveries of such material either through such an agency as that in United States v. Trust No. B. I. 35, 9 Cir., 107 F.2d 22, 26, or by the taxpayer itself. The articles of association contemplate such a business activity in connection with the royalty and provide that taxpayer is authorized to "buy and sell oil, gas, gasoline or hydrocarbon substances."

It is thus apparent that the taxpayer has to make the business judgment from time to time concerning the existing continuing production, whether it will be more profitable for the enterprise to exercise one or the other of the options to receive payment (a) in the form of oil, gas or gasoline or (b) in cash. The trust declaration provides that in order that taxpayer "may dispose of" these petroleum products when received in kind it may make "promissory notes" and "evidences of indebtedness * * * necessary in their judgment to protect or take advantage" of their acquisition. That is to say, the trust contemplates the taxpayer might store and process the oil, gas or gasoline and dispose of them as was done in Trust No. B. I. 35, supra, and gives it in detail the power so to do.

It is our opinion that in making these successive decisions whether it will require the delivery of the royalty product in kind or in cash, the taxpayer is making a succession of business judgments and "is doing the business" within the decision of Morrissey v. Commissioner, 296 U.S. 344, 360, 56 S.Ct. 289, 80 L.Ed. 263, though through the tax years in question it thought it better business to accept cash rather than the oil products.

do all things necessary to the purposes of the organization, to make contracts of every kind, draw and discount negotiable paper, necessary to the agreement, to employ all necessary agents and employees, to pay all expenses incurred in management, and to contract for or on behalf of the trust estate in the furtherance of the business for which the trust is created; that the trustees shall not be personally liable by virtue of any contract, but shall fully bind the property of the trust estate; that all expenses, arising from contract or tort, shall be paid out of the assets and properties of the trust estate; that the trustees shall bring any suits or actions necessary, and defend or compromise them and pay judgments; that the trustees shall hold title to all property and manage and control it and be free from control or management by certificate holders, who shall not have power to remove a trustee, except through the courts; that certificate holders shall not be liable for indebtedness or liability of the trust estate or its operation.

In prior years the taxpayer trust had engaged in other business activities. It was proposed to taxpayer that the North Dome contract be modified to provide that instead of the royalty coming from the described lands, there should be a merger of production with a much wider area of land and that taxpayer should receive a percentage of the total production of the wider area in lieu of that from the lesser. Taxpayer exercised its business judgment and entered into a so-called modified but, in fact, a new contract for a different percentage of the petroleum products from a different area.

It likewise exercised its business judgment in making a similar new agreement in lieu of that for the lands in the Middle Dome Area.

The business of making the new contract with the Associated for the North Dome Area oil lands was prior to the tax years in question, but the income for the tax years come from that one of the two new contracts. That the income was so derived from one of the business actions of prior years does not make it any the less the income of a business trust. Morrissey v. Commissioner, supra, 296 U.S. 361, 56 S.Ct. 289, 80 L.Ed. 263.

The decision of the Board of Tax Appeals is affirmed.