## SECTION SEVEN CORPORATION v. ANGLIM.

No. 10253.

Circuit Court of Appeals, Ninth Circuit.

May 25, 1943.

Louis H. Brownstone, of San Francisco, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Paul S. McMahon, and Louise Foster, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Section Seven Corporation was organized in 1937 for the purpose of acquiring the interest of tenants in common to certain land situated in Fresno County, California. It acquired the property and issued its stock therefor to the tenants in common. Thereafter, on June 3, 1938, it entered into a lease with Seaboard Oil Company of Delaware whereby the latter was granted

156

the exclusive right to explore, drill for, produce, treat, sell, etc., all oil and gas, asphaltum and other hydrocarbons therein for the period of twenty years and for so long thereafter as oil, gas, etc., continued to be produced. The lessee agreed to pay a royalty on all oil produced equal to 1/6th of its value, and a 1/6th part of the net proceeds of all gas produced and sold. It was also provided in the lease that the lessor was to have the option of receiving the royalty not in cash, but delivered in tanks on the leased premises provided 60 days' notice of the exercise of the option was given. The option could be exercised once during the year, and in the absence of such election, the lessee would pay the royalties in cash.

The lessee drilled the premises and brought in oil in September, 1938, and the first royalties were paid in the following month. Oil continued to be produced and by June 30, 1939, the appellant had received oil royalties amounting to $29,409.29, and gas royalties of $22.35. The appellant had no other income except a nominal sum received for rights of way given pursuant to a custom of the oil industry. The appellant did not exercise the option to receive royalties in oil.

The foregoing recital is drawn from the findings of fact made by the district court. For a better understanding of this court's opinion we here set down a few additional facts, extracted from the transcript of record: Prior to the formation of the corporation the title to the real property was in a highly confused state. In order to clear the title to the property it was necessary to bring a partition suit; the co-owners then deeded their respective interests to the corporation and, subsequently, it entered into the lease contract referred to above. The cross-examination of the appellant's secretary revealed that it was known in 1937 that a lease of the property could be executed and, with that knowledge, the corporation was formed by certain co-owners of the said property. The corporation then executed a lease on one-half of the property, although the title was not clear. A partition suit was commenced (whether before or after formation of the corporation is not shown) and while this was being litigated it developed that the owners of five-sixths of the interests in the property were willing to go into the corporation and execute the lease; this new lease, which is set forth in the transcript, was entered into, on June 3, 1938. The witness on cross-examination testified that the corporation was formed solely for the purpose of making the lease; that it was known before the corporation was formed that the lease would be entered into; that the corporation was formed to receive the benefits and advantages of the lease.

Section Seven Corporation, filed a capital stock tax return for the year ending June 30, 1939, and paid a tax thereon of $1,051 on August 30, 1939. On November 18, 1939, a claim for refund was made upon the ground that it was not carrying on business during the year, within the meaning of the statute. The claim was rejected and action for refund was brought in the court below, as a result of which judgment was entered in favor of the defendant collector. The appeal is taken from that judgment.

There is no dispute as to the facts. The single question presented—a question of law—is whether appellant was carrying on or doing business during the taxable period, within the meaning of the statute. Section 601(a) of the Revenue Act of 1938, 52 Stat. 447, 565, § 1200, I.R.C., 26 U.S.C.A. Int.Rev.Code, § 1200(a), applicable here, reads as follows: "(a) For each year ending June 30, beginning with the year ending June 30, 1938, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

Excerpts from Regulations 64 (1938 edition) of the Treasury Department relating to the Capital Stock Tax under Section 601 of the Revenue Act of 1938, are set forth in the margin.[1]

---

[1] Regulations 64 (1938 edition):
"Art. 41. Nature and rate of tax.—The tax is an excise tax * * * upon the exercise of the privilege of doing business and not upon the business itself and is imposed upon each corporation with respect to carrying on or doing business and not upon each business carried on. * * * If a corporation is engaged in business for any portion of a taxable year, liability for the tax is incurred for the entire taxable year.

"Art. 42. Doing business.—The term 'business' is very comprehensive and embraces whatever occupies the time, attention, or labor of men for profit. Accordingly, regardless of the nature of its activities, any corporation organized for

The appellant contends that, under the authorities cited by it, "none of the activities of Section Seven Corp., including the execution by it of rights of way under the circumstances presented, constituted the carrying on or doing of business within the meaning of" the statute in question. Counsel for appellant list the traditional authorities in support of their position, as do counsel for the Collector.

The Supreme Court, in the first of the corporation tax cases, Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, Ann.Cas. 1912B, 1312, gave us this definition: " 'Business' is a very comprehensive term and embraces everything about which a person can be employed. 'Black's Law Dict., 158, citing People v. Commissioners of Taxes, 23 N.Y. 242, 244. 'That which occupies the time, attention, and labor of men for the purpose of livelihood or profit.' Bouvier's Law Dictionary [vol. 1] p. 273." Continuing, at the same page, the Court said: "We think it is clear that *corporations organized for the purpose of doing business, and actually engaged in such activities as* leasing property, collecting rents, managing office buildings, making investments of profits, or *leasing ore lands and collecting royalties,* managing wharves, dividing profits, and in some cases investing the surplus, *are engaged in business within the meaning of this statute,* and in the capacity necessary to make such organizations subject to the law." [Emphasis supplied].

The emphasized portion of the quotation and its applicability to the instant case acquires additional significance in view of the reference by the Supreme Court to one of the taxpayers there in this language: "The Clark Iron Company was organized under the laws of Minnesota, owns and leases ore lands for the purpose of carrying on mining operations, and receives a royalty depending upon the quantity of ore mined." 220 U.S. at page 170, 31 S.Ct. at page 357, 55 L.Ed. 389, Ann.Cas. 1912B 1312.

The case of Zonne v. Minneapolis Syndicate, 220 U.S. 187, 190, 191, 31 S.Ct. 361, 55 L.Ed. 428, was argued to and decided by the Supreme Court on the same dates as the Stone Tracy case. The Syndicate, however, had undergone a reorganization and had disqualified itself from any activity in connection with property owned by it and leased for a term of 130 years, other than receipt and distribution of rentals. A simple, dry conduit, the Supreme Court held it was not doing business.

In McCoach v. Minehill Railway Co., 228 U.S. 295, 33 S.Ct. 419, 57 L.Ed. 842, next in order of the Supreme Court decisions on this question, and heavily relied upon by appellant, the company operated a railroad for many years until 1896, when it leased its entire railroad to another company for a term of 999 years. The Minehill Company agreed, under the lease contract, to maintain its corporate existence and organization, which it did. It received the rent from the lessee and also received interest on its bank deposits and maintained a "contingent fund" from which it also received proceeds. The court concluded that the Minehill Company was not, during the taxable years, "engaged at all in the business of maintaining or operating a railroad, which was the prime object of its incorporation" and, further, "that the Minehill Company was not taxable with respect to the railroad business." 228 U.S. 295, 303, 305, 33 S.Ct. 423, 57 L.Ed. 842.

---

profit and carrying out the purpose of its organization is doing business within the meaning of the Act. Similarly, even if not organized for profit, any corporation which engages in activities ordinarily carried on for profit is doing business. * * * No particular amount of business need be done, nor is it necessary that the business be continuous throughout the taxable year.

"The case is exceptional in which the activities of a corporation organized for profit do not amount to doing business within the meaning of the Act. Such a case is generally limited to one in which the corporation is not pursuing the ends for which organized, i. e., profit.

"Art. 43. Illustrations.—(a) General. —In general 'doing business' includes any activities of a corporation whether it engages in—

* * * * *

"(3) leasing or managing properties, collecting rents or royalties;

* * * *

"(8) any other activities coming within the ordinary and natural signification of the term 'carrying on or doing business.'

"(b) Exceptions.—Ordinarily the exceptions to 'doing business' are restricted to limited activities of a corporation. For example—

"(1) A corporation is not subject to the tax if its corporate powers are limited to the mere owning and holding of property and the distribution of its avails, * * *."

In United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825, the only business done by the taxpayer was to keep up its corporate organization and to collect and distribute the rent received from its single lessee; it was organized for the purpose of acquiring the property and letting it to a certain lessee. The trial court found in favor of the taxpayer and, on writ of error, in affirming the judgment, the Supreme Court said (pages 32, 33 of 237 U.S., page 501 of 35 S.Ct., 59 L.Ed. 825) : "The claimants' characteristic charter function, and the only one that it was carrying on, was the bare receipt and distribution to its stockholders of rent from a specified parcel of land. Unless its bare existence as an intermediary was doing business, it is hard to imagine how it could be less engaged."

The Supreme Court took occasion in Von Baumbach v. Sargent Land Co., 242 U.S. 503, 516, 37 S.Ct. 201, 204, 61 L.Ed. 460, to discuss the foregoing cases and then said: "It is evident, from what the court has said in dealing with the former cases, that the decision in each instance must depend upon the particular facts before the court. The fair test to be derived from * * * all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails, and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

Following the Sargent Land Co. case, the Supreme Court, in Edwards v. Chile Copper Co., 270 U.S. 452, 455, 46 S.Ct. 345, 346, 70 L.Ed. 678, expressed itself in this language: "If the corporation was one that Congress had power to tax in this way, it is hard to say that it is not within the taxing acts. It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption 'when not engaged in business' ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit. * * *"

The taxpayers were held to be "doing business" both in the Sargent Land Company case and the Chile Copper Company case.

■ We agree with the other courts which have considered this problem that there is, perhaps, no precise formula whereby all cases under the statute might readily be resolved, and that each case must be decided upon its own facts. But we do believe that, drawing upon the published decisions,[2] we might venture to state a principle whereby the applicability of the tax may be gauged. This principle might be stated as follows: If a corporation was organized for profit and was doing what it was principally organized to do in order to realize a profit, no special volume of business is necessary to bring it within the taxing act—a very slight activity may be deemed sufficient to constitute "doing business." Edwards v. Chile Copper Co., supra; Page et al. v. M. Rich & Bros. Co., 5 Cir., 99 F.2d 607, 610; Blair v. Wilson Syndicate Trust, 5 Cir., 39 F.2d 43, 45; Codman v. United States, D. C. Mass., 30 F.Supp. 732, 735, 736.

Respecting the option in the contract to take the royalties in cash or in kind, the taxpayer contends that because unless the option was exercised the royalties were to be paid in cash and the option to take in kind was not exercised, the mere power to elect does not constitute "doing business." A short answer is that it is the exercise of the judgment to take in cash or in kind that constitutes a business activity; in a word,

[2] Doing business: United States v. Hercules Min. Co., 9 Cir., 119 F.2d 288, 291; Lyon Lumber Co. v. Harrison, etc., 7 Cir., 113 F.2d 443, 446; American Investment Securities Co. v. United States, 1 Cir., 112 F.2d 231, 233–234; Page et al. v. M. Rich & Bros. Co., 5 Cir., 99 F.2d 607, 610; Harmar Coal Co. v. Heiner, D.C.Pa., 26 F.2d 729, 731, affirmed 3 Cir., 34 F.2d 725, 728; Chemung Iron Co. v. Lynch, 8 Cir., 269 F. 368, 370–371; Codman v. United States, D.C. Mass., 30 F.Supp. 732, 735, 736.

Not doing business: Sears v. Hassett, 1 Cir., 111 F.2d 961, 964; United States v. Hotchkiss Redwood Co., 9 Cir., 25 F. 2d 958; Rose v. Nunnally Inv. Co., 5 Cir., 22 F.2d 102, 103; United Mercury Mines Co. v. Viley, D.C.Idaho, 20 F. Supp. 734.

See also the cases collected in note 4, Lyon Lumber Co. v. Harrison, etc., 7 Cir., 113 F.2d 443, 445.

the taxpayer elected not to exercise the option, which is a business activity. Besides, this court heretofore has said: "It is our opinion that in making these successive decisions whether it will require the delivery of the royalty product in kind or in cash, the taxpayer is making a succession of business judgments and 'is doing the business' within the decision of Morrissey v. Commissioner, 296 U.S. 344, 360, 56 S.Ct. 289, 80 L.Ed. 263, * * *."

Kettleman Hills Royalty Syndicate No. 1 v. Commissioner, 9 Cir., 116 F.2d 382, 383. Moreover, it must be apparent to anyone familiar with the provisions of an oil and gas lease such as that here, that the lessor is not a mere dry conduit—an inert company (cf. American Investment Securities Co. v. United States, 1 Cir., 112 F.2d 231, 233; Argonaut Cons. Mining Co. v. Anderson, 2 Cir., 52 F.2d 55, 57) because the requirements, duties and obligations imposed upon the lessee demand an alert and intelligent supervision by the lessor to the end that the contract be complied with.

■ An inspection of Section Seven Corporation in the light of the principles above stated reveals a corporation ostensibly organized for the purpose of realizing a profit and conducting its affairs toward that end. Although the charter or articles of incorporation are not before us, we safely can say that it is apparently not a merchandising or a manufacturing corporation. Its activities must not, therefore, be measured by the same standard. The appellant was organized to draw into a single possession the various interests in the land, to clear the title, to enter into an oil and gas lease, to receive the royalties, to determine whether they should be collected in cash or in kind, and, by reasonable implication, to enforce the terms of the lease that the corporation might enjoy the ultimate benefit therefrom, and to distribute the surplus profits to the shareholders. It did precisely this. Moreover, it executed various rights of way over the land in favor of third persons. With a full knowledge of all this, we must decline to say that Section Seven Corporation, in doing what it was organized to do, was not doing business.

It is our opinion that the cases of McCoach v. Minehill Railway Co., supra, and United States v. Emery, supra, are sufficiently distinguishable upon the facts as not to be binding here. In any event, their authority is to be very narrowly limited in view of the later expressions of the Supreme Court in the more realistic and practical decision in Edwards v. Chile Copper Co., supra.

■ Under Article 42 of Regulations 64, which is both applicable and valid (Magruder v. Washington B. & A. Realty Corp., 316 U.S. 69, 72, 73, 62 S.Ct. 922, 86 L.Ed. 1278), and the decisions, we conclude that the appellant was doing business under the terms of Section 601(a) of the Revenue Act of 1938, supra, and was liable to pay the tax assessed thereunder. Flint v. Stone Tracy Co. (Clark Iron Co. case), 220 U.S. 107, 170, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas. 1912B, 1312; Edwards v. Chile Copper Co., 270 U.S. 452, 455, 46 S.Ct. 345, 70 L.Ed. 678; United States v. Hercules Min. Co., 9 Cir., 119 F.2d 288, 291; Chemung Iron Co. v. Lynch, 8 Cir., 269 F. 368, 370-371.

The judgment of the District Court is affirmed.

