**NEW LONDON NORTHERN R. CO. v. SMITH, Collector of Internal Revenue.**

No. 56.

Circuit Court of Appeals, Second Circuit.

March 2, 1944.

Arthur M. Brown, of Norwich, Conn. (Horace H. Powers, of St. Albans, Vt., of counsel), for plaintiff-appellant New London Northern R. Co.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, A. F. Prescott, and Newton K. Fox, Sp. Assts. to the Atty. Gen., and Robert P. Butler, U. S. Atty., of Hartford, Conn., for defendant-appellee Thomas S. Smith.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an action brought by the plaintiff, New London Northern Railroad Company, against the Collector of Internal Revenue, to recover $1,871, representing capital stock taxes paid for the taxable year ending June 30, 1936, together with interest thereon from July 1, 1930, under Section 105 of the Revenue Act of 1935, as amended by Section 401 of the Revenue Act of 1936.

The plaintiff filed a capital stock tax return with the Commissioner of Internal Revenue for the year ending June 30, 1936, in which it claimed an exemption from such a tax on the ground that it was not doing business within the meaning of the foregoing sections which, so far as pertinent, are quoted below.[1] The exemption was denied and the above tax was assessed. The validity of the claim asserted in the present case depends on whether the plaintiff was carrying on business during the period in question. The court below held that the plaintiff was carrying on business and directed judgment for the Collector on that ground. We think that the judgment was right and should be affirmed.

The plaintiff is a domestic corporation organized in the State of Connecticut in 1859, and in the State of Massachusetts in 1860. The primary purpose of its organization was to operate a railroad, but various special acts and amendments to its charter permitted it to engage in other activities of a business nature, including the operation of a steamboat line between New London and New York, or to subscribe for and hold shares of any corporation authorized to establish such a steamboat line; likewise to subscribe for the stock and guarantee the bonds of certain railroads and to issue

---

[1] Revenue Act of 1935, c. 829, 49 Stat. 1014, 26 U.S.C.A. Int.Rev.Acts, page 796:

"Sec. 105. Capital Stock Tax

"(a) For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.40 for each $1,000 of the adjusted declared value of its capital stock."

\* \* \* \* \*

Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Acts, page 943:

"Sec. 401. Capital Stock Tax

"(a) Section 105 of the Revenue Act of 1935 is amended by striking out '$1.40' wherever appearing therein and inserting in lieu thereof '$1.' "

bonds to refund its bonded debt. On October 17, 1891, it leased its physical railroad properties and steamboat properties for a period of 99 years from December 1, 1891, to the Consolidated Railroad Company of Vermont, the lease was later assigned to the Central Vermont Railroad, which in turn was succeeded as lessee by the Central Vermont Railway Company, which latter company was succeeded by the Central Vermont Railway, Inc., the present lessee of the properties. The lease provided for an annual rental of $210,000 and also for the payment to the lessor of $1,000 each year for the purpose of keeping up the lessor's organization. Since the lease was entered into, payments of rental have been made in accordance with its provisions. On April 5, 1935, pursuant to a vote of its board of directors, the plaintiff purchased 1500 shares of common capital stock of the Central Vermont Transportation Company for $60,000, of which amount $50,000 was borrowed from the National Bank of Commerce of New London, and repaid from plaintiff's funds during the 1936 tax year. This stock has been held continuously by plaintiff since April 5, 1935. There were no securities, bonds or stock bought or sold by the plaintiff, or on its behalf, during the taxable year ending June 30, 1935, other than the foregoing. On December 3, 1936, the plaintiff received $10,000 in redemption of ten $1000 4¾% bonds of Cuyahoga County, Ohio, due October 1, 1936, which had matured and were paid at par by the County. On January 13, 1937, the plaintiff purchased ten of its own $1,000 bonds for the sum of $10,000; otherwise there were no securities, bonds or stock bought or sold by the plaintiff or on its account during the taxable year ending June 30, 1937.

Over the period from the time of the lease of its entire property on December 1, 1891, to December 31, 1935, the plaintiff had accumulated from its income securities of a book value of $204,901. First mortgage bonds of the plaintiff in amount of $1,500,000 became due July 1, 1940, at which time this issue of bonds was refunded by the plaintiff. The necessary expenses of refunding were $62,011.15.

In the year 1909 plaintiff's then lessee caused the Central Vermont Transportation Company to be organized under the laws of the State of Maine for the operation of the steamboat line and its equipment which were included in the properties leased by the plaintiff. During the year 1935 plaintiff's lessee, being itself under alien ownership, was required by law or regulation to divest itself of ownership of a majority of the stock in the steamboat operating company. The purchase by the plaintiff of 1500 shares of the common capital stock of the Central Vermont Transportation Company on April 5, 1935, placed in plaintiff ownership of 75% of the shares of the common capital stock of Central Vermont Transportation Company. Each year since April 5, 1935, the plaintiff has owned and voted a majority of the shares of stock of the Central Vermont Transportation Company, electing a board of directors—a majority of whose members were directors of the plaintiff. A majority of the officers of the Transportation Company were likewise officers of the plaintiff.

During the years 1934 to 1938 inclusive, plaintiff's income from its lease was in each year $213,552.50, and its income from securities was approximately $5,000 in 1934; $6,000 in 1935; $10,000 in 1936; $11,000 in 1937, and $10,000 in 1938. Its general expenses were about $1800 in 1934; $3500 in 1935; $3300 in 1936; $2200 in 1937 and $3500 in 1938. In each of these five years it paid out as salaries between four and five thousand dollars. It also paid out in each of these years interest on its bonds to the amount of about $60,000, and, after payment of interest, taxes, expenses and salaries, distributed to its shareholders, dividends amounting to approximately $135,000. On December 10, 1937, its board of directors voted to authorize the borrowing of $25,000 to be used, if necessary, in order to finance the replacement of boilers in two steamers belonging to Central Vermont Transportation Company, but it does not appear that any money was actually borrowed or used under this authority.

It is true that the plaintiff during the year 1936 and in prior and subsequent years neither operated the railroad nor the steamboat line, though it was interested therein as a stockholder in the operating companies, but it was active in maintaining an organization to realize corporate profits and in building up and investing revenues to meet its own obligations and to assist its subsidiaries in the event that such assistance should be needed. It is contended on its behalf that in McCoach v. Minehill & S. H. R. Co., 228 U.S. 295, 33 S.Ct. 419, 57

L.Ed. 842, the Supreme Court held that when a corporation fails to exercise its primary purpose it is not so carrying on business as to be subject to a franchise tax. We do not so read that decision for while the court there pointed out that the Minehill Railroad Company did not operate a railroad it went on to hold that its other activities were so slight as to be insufficient to subject it to a franchise tax. It may be hard to see why any organization while exercising its franchises should be able to avoid the tax except on the general theory that "the quality of mercy is not strained" but "droppeth like the gentle rain from heaven." Yet the doctrine, if sufficiently limited, has been regarded as just. It, however, was strictly limited in Edwards v. Chile Copper Co., 270 U.S. 452, 46 S.Ct. 345, 70 L.Ed. 678; Magruder v. Washington, B. & A. Realty Corp., 316 U. S. 69, 62 S.Ct. 922, 86 L.Ed. 1278, and in our own decision in Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 52 F.2d 55, 56. Compare also Von Baumbach v. Sargent Land Co., 242 U.S. 503, 37 S.Ct. 201, 61 L.Ed. 460, and Section Seven Corporation v. Anglim, 9 Cir., 136 F.2d 155.

We think that plaintiff's purchase of 75% of the stock of the transportation Company, its accumulation of a surplus and investment thereof, and its continued activity in liquidating its obligations and arranging to help or to be in a position to come to the assistance of its subsidiaries, removes it from the class of a mere distributing agent for its stockholders which would render it exempt from the tax. We accordingly hold that the tax was properly assessed.

Judgment affirmed.