**BARKER BROS. CORPORATION v. ROGAN, Collector of Internal Revenue.**

**No. 9962.**

Circuit Court of Appeals, Ninth Circuit.

March 31, 1942.

Joseph D. Peeler and Melvin D. Wilson, both of Los Angeles, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Paul S. McMahon, and Frank Ready, Sp. Assts. to Atty. Gen., and Wm. Fleet Palmer, U.S. Atty., and Armond Monroe Jewell, Asst. U.S. Atty., both of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment against appellant corporation for a capital stock tax for the taxable year ending June 30, 1936. Appellant claims that it was not liable since it was not carrying on or doing any business for any part of that tax year and hence was not liable for the tax imposed by section 105(a) of the Revenue Act of 1935, as amended, 26 U.S.C.A. Int.Rev. Acts, page 796.

The question here is whether certain acts of appellant in aid of a wholly owned subsidiary corporation, with respect to securing for the subsidiary a lease of a store building in which the latter conducted a part of its business of selling furniture and home furnishings, constituted "doing business" within the meaning of that section.

Section 105(a), as amended, provides:

"For each year ending June 30, beginning with the year ending June 30, 1936, there is hereby imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

Article 42 of Treasury Regulations 64 for the year 1936 relating to Section 105(a) embodies in its definition of the term "doing business" the holdings of the Supreme Court in Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312, as follows:—

"Art. 42. Doing business.—The term 'business' is very comprehensive and embraces whatever occupies the time, attention, or labor of men for profit. Accordingly, regardless of the nature of its

activities, any corporation organized for profit and carrying out the purpose of its organization is doing business within the meaning of the Act. * * * No particular amount of business need be done, nor is it necessary that the business be continuous throughout the taxable year."

And Article 43 of the same Regulations provides

"Art. 43. Illustrations.—(a) General.— In general 'doing business' includes any activities of a corporation whether it engages in—

* * * * *

"(4) managing, financing, controlling or directing the operations, performing any function, or, in any other way, aiding or serving the general purposes of any affiliated or related company; * * *."

Thereafter Congress reenacted the capital stock provision of Section 105 of the Revenue Act of 1935 in Section 401 of the Revenue Act of 1936, using the same language except with respect to the rate of taxation and other matters not material to this case.

The Regulations of 1936 were merely substantial repetitions of Articles 11 and 12 of Regulations 64 of the years 1922 and 1924; and Articles 21 and 22 of Treasury Regulations 64 of 1933 and of Articles 32 and 33 of the Regulations of 1934. The Treasury Regulations of 1938 in Article 42 repeat what had then become a long standing practice.[1]

■■■ The case was submitted below on the basis of an agreed statement of facts. These facts are summarized as follows:

Appellant was organized under the laws of Maryland on March 15, 1928, and issued at that time a portion of its stock in exchange for all of the outstanding stock of Barker Bros. Incorporated, hereinafter referred to as the subsidiary company. The subsidiary was organized under the laws of Delaware on December 28, 1923. During the taxable year in question all of its outstanding stock was owned by appellant. Throughout its existence the subsidiary company was actively engaged in the retail business of selling furniture and furnishings. The subsidiary company had its own board of directors, whose members were also the members of the board of directors of appellant. It also had its own officers, many of whom were also officers of appellant. The directors and officers of the subsidiary company received compensation from the subsidiary company for their services to it, which services were of a substantial nature.

Appellant did not own or rent any office or place of business, nor did it own or rent any office furniture. Its directors and officers received no compensation for their services to appellant, which services were of a routine nature.

On October 30, 1924, the subsidiary company entered into a long sublease on land upon which its main store building in Los Angeles, California, was erected by Sun Realty Co., an outside corporation, as lessee under a 99-year lease. Prior to March 25, 1932, Sunflower Building Co., an outside corporation, had acquired from Sun Realty Co., both the 99-year lease and the sublease to the subsidiary company.

Sunland Investment Co., hereinafter referred to as the second subsidiary, was organized under the laws of Delaware on February 15, 1932, all of its stock being owned or controlled by the subsidiary company. The second subsidiary was organized by the subsidiary company for the purpose of acquiring the leasehold interests then held by Sunflower Building Co.

By written agreement dated March 25, 1932, Sunflower Building Co. sold to the second subsidiary the 99-year lease and the sublease to the subsidiary company for

---

[1] The situation is thus seen to be different from that in Higgins v. Commissioner, 312 U.S. 212, 215, 216, 61 S.Ct. 475, 477, 85 L.Ed. 783, where there had been no administrative definition of "carrying on any business" in any Regulations or ruling by the Secretary in connection with the deductions allowable under Section 23(a) of the income tax act provisions of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 23(a).

Also distinguishable are City Bank, etc., Co., Trustee, v. Helvering, 313 U.S. 121, 61 S.Ct. 896, 85 L.Ed. 1227, and United States v. Pyne et al., Executors, 313 U.S. 127, 61 S.Ct. 893, 85 L.Ed. 1231, also construing Section 23(a) with respect to such deductions,—in the former case claimed by a trustee of a trust managing its stocks and bonds, and in the latter by an executor with similar functions. The latter case (313 U.S. at page 131, 61 S.Ct. 893, 85 L.Ed. 1231) distinguishes operating a "store" from ordinary executor's functions.

various considerations, including a contingent amount of $305,000 to be paid in annual installments on March 1st of each year, in an amount equal to 10 per cent of the net earnings of the subsidiary company for the preceding calendar year.

Shortly thereafter, the second subsidiary revised the sublease of the subsidiary company so that the latter had an identical contingent liability of $305,000 to the second subsidiary.

On January 16, 1935, appellant purchased from Sunflower Building Co. its contingent claim against the second subsidiary, agreeing to pay therefor the total sum of $152,500, of which $22,500 was payable in January, 1935, and thereafter on January 2nd of each of the 13 years beginning in 1936, an installment of $10,000, without interest. Appellant borrowed $22,500 from the subsidiary company in January, 1935, and paid it to Sunflower Realty Co.

The transactions during the tax year ending June 30, 1936, which appellant contends the district court erroneously held to constitute doing business in that period, are as follows:

On January 31, 1936, appellant paid to Sunflower Building Co. an amount of $10,000 due on its purchase of the contingent claim; as appellant did not have sufficient cash, it borrowed $10,000 from the subsidiary company and paid it to Sunflower Building Co. on the same date.

On March 30, 1936, the subsidiary company issued its check to the second subsidiary for $31,228.94, representing 10 per cent of its net earnings for 1935; the second subsidiary issued its check to appellant for the same amount; and appellant then issued its check for $31,000 to the subsidiary company. This left a balance of $1,500 due by appellant to the subsidiary company.

On June 5, 1936, appellant obtained from the subsidiary company and paid to Sunflower Building Co. $10,000 as a payment on its purchase agreement.

We thus find that during the taxable year in question appellant was carrying out its contract made in the previous taxable year for the purchase of the contingent claim. It was making payments thereon, collecting moneys due it under the contract, and borrowing money to apply on the purchase price and repaying the initial sum which it had borrowed. Obviously, all these transactions were made for the purpose of a business gain.

It is not contended by appellant, nor could it be, that appellant and its subsidiary company and second subsidiary are not separate entities for the purposes of taxation. It is a case where those controlling the appellant thought it wisest to accomplish the extinguishment of the subsidiary company's sublease obligations through the several agencies of the three corporations. Hence borrowing from one of the subsidiaries is no different from borrowing from a bank, and the aid in securing for the subsidiary company a lease of a store for its furniture business is nonetheless a business transaction, whether in so doing appellant be regarded as principal or agent. The fact that there was a single objective to be attained by these transactions carried on by the appellant and its two subordinate corporations would make it nonetheless an enterprise engaged in by each of the three. Edwards v. Chile Copper Company, 270 U.S. 452, 455, 456. 46 S.Ct. 345, 70 L.Ed. 678.

The fact that the various transactions performed in the taxable year engagements made in a prior year makes the performances nonetheless business done in the taxable year. Argonaut Consolidated Mining Co. v. Anderson, 2 Cir., 52 F.2d 55, certiorari denied 284 U.S. 682, 52 S.Ct. 200, 76 L.Ed. 576; Page v. M. Rich & Bros. Co., 5 Cir., 99 F.2d 607, certiorari denied 306 U.S. 662, 59 S.Ct. 787, 83 L.Ed. 1059.

We think it clear that the transactions engaged in by appellant in the tax year in question were those of making an "investment for profit" and come within the phrase "doing business" of Section 105(a) and as defined in Treasury Regulations 64, and in Flint v. Stone Tracy Co., 202 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312.

Affirmed.