**BALDWIN CO. v. BERLINER, Former Collector of Internal Revenue.**

**No. 24649.**

District Court, N. D. California, S. D.
April 30, 1946.

Louis Janin and Harold E. Haven, both of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal. (Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and George R. Parsons, Sp. Assts. to the Atty. Gen., on the brief), for defendant.

ROCHE, District Judge.

Plaintiff, a California corporation, seeks by this action to recover the amount heretofore paid by it as capital stock tax, penalty and interest for the fiscal year ending June 30, 1941. The tax was levied on the ground that the taxpayer corporation was carrying on or doing business within the meaning of Section 1200 of the Internal Revenue Code, the pertinent portion of which appears below.[1]

The plaintiff is a personal holding company, organized in March of 1941. It is the successor to the Baldwin Corporation, a Colorado corporation, whose assets consisted chiefly of 10,621 shares of stock in the Hobart Estate Co. and $25,000 in notes receivable, with liabilities of $73,000 in notes payable. The Baldwin Corporation had outstanding 2,000 shares of capital stock, par value $100 per share, of which 1,760 shares were owned by Virginia H. Baldwin and 240 shares by her son Charles.

Mrs. Baldwin changed her domicile from Colorado to California and the holding company reorganization was to accord with this change.

By this reorganization the plaintiff acquired all the assets and assumed all the liabilities of its predecessor corporation and in consideration therefor issued the entire amount of its capital stock, 2,000 shares. This stock had the same par value and was issued to the same two shareholders, in the same proportion, as in the Colorado corporation. The assets and liabilities remained the same.

Although its Articles of Incorporation are broad in scope it appears clearly from the record that the plaintiff was not organized for the purpose of doing business and in fact carried on no business unless the necessary reorganization steps be deemed to bring it within the statutory provision. Indeed the Government recognized its existence as merely a "dry" holding company when it refunded the capital stock tax paid for the fiscal year ending June 30, 1942. For the year in question, however, the defendant relies on the following transactions to render the corporation taxable.

The Baldwin Corporation, plaintiff's predecessor, owed $73,000, as follows:

| | |
|---|---|
| The Bank of California, N.A. | $25,000 |
| Crocker First Nat'l Bank of S.F. | 25,000 |
| Hobart Estate Company | 17,000 |
| Virginia H. Baldwin | 6,000 |

Plaintiff borrowed money from these creditors in the above amounts and executed notes, those held by the two banks each being secured by 1,000 shares of stock of the Baldwin Corporation. This money was then deposited in special accounts of $36,500 each in the two creditor banks. Plaintiff then wrote checks, payable to the Baldwin Corporation, for the full amount in each account and delivered them to the banks for deposit in special accounts of the Baldwin Corporation. Plaintiff then caused the Baldwin Corporation to draw

---

[1] Sec. 1200 (As amended by section 301 (a) of the Revenue Act of 1941, c. 412, 55 Stat. 687).

"Tax. (a) Domestic corporations. For each year ending June 30, beginning with the year ending June 30, 1939, there shall be imposed upon every domestic corporation with respect to carrying on or doing business for any part of such year an excise tax of $1.25 for each $1,000 of the adjusted declared value of its capital stock." 26 U.S.C.A. Int.Rev.Code, § 1200.

checks on this amount to pay its debts. When this was done the assets of the Baldwin Corporation were transferred to plaintiff and the stock of the Baldwin Corporation given as security was replaced by other stock.

The result of these transactions was merely the substitution of plaintiff as the debtor in place of the Colorado corporation. They resulted in no profit. They were not steps in the organization of a corporation designed to carry on business for profit. Their sole purpose was to effect a change of the holding company's domicile from Colorado to California, to accord with the change of domicile of Mrs. Baldwin, the principal shareholder. When this was accomplished the Colorado corporation was dissolved.

 The question of whether a corporation is "carrying on or doing business" within the meaning of the statute is often a difficult one and to answer it the corporation's activities must be viewed in relation to its purpose. In the language of the Ninth Circuit Court of Appeals in Section Seven Corporation v. Anglim, 9 Cir., 136 F.2d 155, 158: "We agree with the other courts which have considered this problem that there is, perhaps, no precise formula whereby all cases under the statute might readily be resolved, and that each case must be decided upon its own facts. But we do believe that, drawing upon the published decisions, we might venture to state a principle whereby the applicability of the tax may be gauged. This principle might be stated as follows: If a corporation was organized for profit and was doing what it was principally organized to do in order to realize a profit, no special volume of business is necessary to bring it within the taxing act—a very slight activity may be deemed sufficient to constitute 'doing business.' "

When this principle is applied the cases cited by defendant are distinguishable from the case at bar. They involve taxpayers that were either actually operating companies, as in Magruder v. Washington, Baltimore & Annapolis Realty Corp., 316 U.S. 69, 62 S.Ct. 922, 86 L.Ed. 1278, and Mt.

Hebron Corp. v. United States, 51 F.Supp. 851, 100 Ct.Cl. 164, or they were doing business through subsidiaries which they controlled, as in Associated Furniture Corp. v. United States, 44 F.2d 78, 70 Ct.Cl. 517, and Barker Bros. Co. v. Rogan, 9 Cir., 126 F.2d 917. In each situation the company was organized for profit and was doing what it was principally organized to do in order to realize a profit.

Defendant also emphasizes the fact that in the course of its organization the plaintiff exchanged its stock for that of its predecessor corporation. This, the defendant asserts, was sufficient to subject plaintiff to the tax. It is true that under Treasury Regulations 64, Article 43(b) (2), in force at the time, as an illustration of what might be an exception to "doing business" the following is given: "A corporation may complete its organization and sell its capital stock for cash without incurring liability. However, the exchange of its capital stock for property other than cash or the use of the proceeds from the sale of its capital stock for the purchase of property are corporate business acts and constitute doing business." When this is read, however, in its context the "exchange * * * for property other than cash" would seem to refer to an exchange of stock for property to be used in carrying on business for profit. This interpretation is supported by the language used in this subsection as revised for the fiscal year ending June 30, 1942.

 Since plaintiff was clearly not organized to carry on business for profit and since its exchange of capital stock for that of its predecessor was merely a necessary step in its organization, the court finds that the plaintiff is entitled to a refund of the capital stock tax paid by it for the fiscal year ending June 30, 1941. Accordingly, it is by the court

Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the plaintiff and against the defendant in the sum of $210.49, together with interest thereon from February 19, 1943, and that plaintiff recover its costs in this behalf expended.